# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Belknap Superior Court
64 Court St.
Laconia NH  03246

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION



Case Name:      **William Spencer, et al v U.S. Department of Transportation, et al**
Case Number:    **211-2022-CV-00228**

Date Complaint Filed: November 16, 2022

A Complaint has been filed against William Burke; Cynthia Campise; Kenneth Chaput; Todd Damiani; Michael Doran; Christopher Gray; David Hilts; Steven Kace; Steve Piwowarski; U.S. Department of Transportation; Douglas Wood in this Court. A copy of the Complaint is attached.

## The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| January 07, 2023 | William Spencer; Spencer Brothers, LLC shall have this Summons and the attached Complaint served upon William Burke; Cynthia Campise; Kenneth Chaput; Todd Damiani; Michael Doran; Christopher Gray; David Hilts; Steven Kace; Steve Piwowarski; U.S. Department of Transportation; Douglas Wood by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| January 28, 2023 | William Spencer; Spencer Brothers, LLC shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | William Burke; Cynthia Campise; Kenneth Chaput; Todd Damiani; Michael Doran; Christopher Gray; David Hilts; Steven Kace; Steve Piwowarski; U.S. Department of Transportation; Douglas Wood must electronically file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to William Burke; Cynthia Campise; Kenneth Chaput; Todd Damiani; Michael Doran; Christopher Gray; David Hilts; Steven Kace; Steve Piwowarski; U.S. Department of Transportation; Douglas Wood:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| Keith A. Mathews, ESQ | American Wealth Protection 1000 Elm St Ste 800 Manchester NH  03101 |
| U.S. Department of Transportation | 1200 New Jersey Avenue SE Washington DC  20590 |
| Michael Doran | 406 Ledgeview Drive Rochester NH  03867 |
| William Burke | 29 Lupine Lane Rochester NH  03867 |
| Kenneth Chaput | 4 Meadowbrook Drive Milford NH  03055 |

NHJB-2678-Se (07/01/2018)

Steven Kace
David Hilts
Steve Piwowarski
Douglas Wood
Christopher Gray
Cynthia Campise
Todd Damiani

19 Cyrus Lane Gilford NH  03246
11 Robin Road Concord NH  03301
1 Linden Lane Hampton NH  03842
127 Westerly Way Standish ME  04071
12 Roble Lane Atkinson NH  03811
8 2nd Street Annapolis MD  21401
129 Thunder Road Fremont NH  03044

BY ORDER OF THE COURT

November 23, 2022

Abigail Albee
Clerk of Court

(1075)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Belknap Superior Court
64 Court St.
Laconia NH 03246

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## WILLIAM SPENCER; SPENCER BROTHERS, LLC
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

Case Name:    **William Spencer, et al v U.S. Department of Transportation, et al**
Case Number:   **211-2022-CV-00228**

<u>Instructions for:</u> **William Spencer; Spencer Brothers, LLC**

The attached Summons must be sent to the Sheriff's Department for service. Service must be completed on or before **January 07, 2023.**
<u>Further action is required by you</u>
You must:

- Print two copies of the Summons per defendant
- Print two copies of the Notice to Defendant per defendant
- Print two copies of the Complaint filed with the Court per defendant
- Make two packets for service. Each packet should contain:
    - One Summons
    - Once Notice for Defendant
    - One Complaint filed with the Court
- Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.

<u>Sheriff Departments in New Hampshire:</u>

| | |
|---|---|
| <u>Belknap County Sheriff's Department:</u> | <u>Hillsborough County Sheriff's Department:</u> |
| <u>Carroll County Sheriff's Department:</u> | <u>Merrimack County Sheriff's Department:</u> |
| <u>Cheshire County Sheriff's Department:</u> | <u>Rockingham County Sheriff's Department:</u> |
| <u>Coos County Sheriff's Department:</u> | <u>Strafford County Sheriff's Department:</u> |
| <u>Grafton County Sheriff's Department:</u> | <u>Sullivan County Sheriff's Department:</u> |

**\*If one or more of the parties resides out of state, please click <u>here</u> for the requirements\***
Service must be made upon the defendant before **January 07, 2023.**

If the Sheriff is unable to complete service by **January 07, 2023** you will receive a "Notice of Incomplete Service" from the Sheriff's Department. You may request that new paperwork be issued by electronically filing a Request for Documents. There is a fee for this request.

The Sheriff will mail the 'Return of Service' to you. You MUST electronically file the 'Return of Service' with the court by January 28, 2023.

**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

## <u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
### PLEASE PRINT CLEARLY

Date: _____    Case #: _____

### <u>Who are you requesting to be served?</u>
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____    APT #: _____

_____

Home phone #: _____    Cell phone #: _____

Sex: ☐ Male  ☐ Female    Race: _____

Last 4 digits of SS#: xxx-xx-  ____  ____  ____  ____    D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

### <u>Your Information:</u>
Name (please print): _____

Residential address:                    Mailing address:

_____    _____

_____    _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

### ♦IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL♦

## SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)

Fees Paid: $_____ Cash #: _____ Check#: _____
Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____
Sheriff File # _____ Authorization #: _____

NHJB-2678-Se (07/01/2018)

<u>Instructions for filing the Return of Service</u>:

If you are working with an attorney, they will guide you on the next steps. If you are going to represent yourself in this action, go to the court's website: <u>www.courts.state.nh.us</u>, select the Electronic Services Icon and then select the option for a self-represented party.

1. Select "I am filing into an existing case". Enter 211-2022-CV-00228 and click Next.

2. When you find the case, click on the link follow the instructions on the screen. On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3. Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4. If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents. On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

<u>November 23, 2022</u>                          <u>Abigail Albee</u>
Date                                             Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to <u>https://odypa.nhecourt.us/portal</u> and following the instructions in the User Guide. In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Belknap Superior Court
64 Court St.
Laconia NH  03246

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:      **William Spencer, et al v U.S. Department of Transportation, et al**
Case Number:    **211-2022-CV-00228**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Belknap Superior Court**. Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Belknap Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **211-2022-CV-00228** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

NHJB-2678-Se (07/01/2018)

STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH

BELKNAP                                                      SUPERIOR COURT

William Spencer
Spencer Brothers LLC

Plaintiff,

v.

U.S. Department of Transportation

Michael Doran, in his official capacity,
William Burke, in his official capacity,
Kenneth Chaput, in his official capacity,
Steven Kace, in his official capacity,
David Hilts, in his official capacity,
Steven Piwowarski, in his official capacity,
Douglas Wood, in his official capacity,
Christopher Gray, in his official capacity,
Cynthia Campise, her official capacity,
Todd Damiani, in his official capacity.

Defendants.

                                                    211-2022-CV-00228

Case No.:

**PLAINTIFFS' FIRST COMPLAINT
AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. Plaintiffs Spencer Brothers LLC and William Spencer bring suit against the Defendants

   for malicious prosecution which resulted in substantial damage to William Spencer and

   his families' business. The above-named defendants conspired and colluded in order to

   cause injury and further aggravate the initial injury by comporting themselves, under

color of law, to harass, retaliate, defame and cause loss of standing in the community for the Plaintiff. The Defendants conspired together to falsify documents in retaliation against Mr. Spencer. The Defendants dismissed the proceedings against Mr. Spencer right before depositions of their main witnesses was set to occur, in the fall of last year.

## PARTIES

2. The Plaintiff, William Spencer, is an individual employed by Spencer Bros. LLC, with a place of business at 116 Hounsell Avenue, Laconia, New Hampshire.

3. Spencer Brother LLC is a limited liability company with a principal place of business located at 116 Hounsell Ave, Laconia, NH 03246.

4. U.S. Department of Transportation, with a principal place of business located at 1200 New Jersey Avenue, SE, Washington, DC 20590.

5. Michael Doran is an individual employed by the New Hampshire State Police and resides at 406 Ledgeview Drive in Rochester, New Hampshire.

6. William Burke is an individual employed by the New Hampshire State Police and resides at 29 Lupine Lane, Rochester, New Hampshire.

7. Kenneth Chaput is an individual employed by the New Hampshire State Police and resides in 4 Meadowbrook Drive, Milford, New Hampshire.

8. Steven Kace is an individual formerly employed by the New Hampshire State Police and resides at 19 Cyrus Lane in Gilford, New Hampshire.

9. David Hilts is an individual employed by the New Hampshire State Police and resides at 11 Robin Road in Concord, New Hampshire.

10. Steve Piwowarski is an individual employed by the Federal Motor Carriers Safety Administration (FMCSA) and resides at 1 Linden Lane in Hampton, New Hampshire.

11. Douglas Wood is an individual who works for the Federal Motor Carriers Administration (FMCSA) and resides at 127 Westerly Way in Standish, Maine.

12. Christopher Gray is an individual who works for Federal Motor Carriers Administration (FMCSA) and resides at 12 Robie Lane in Atkinson, New Hampshire.

13. Cynthia Campise is an individual employed by the Department of Transportation and resides at 8 2nd Street in Annapolis, Maryland.

14. Todd Damiani is an individual employed by the Department of Transportation and resides at 129 Thunder Road in Fremont, New Hampshire.

### JURISDICTION AND VENUE

15. Jurisdiction is invoked pursuant to RSA 491:7.

16. Venue is proper in Belknap County as the conduct giving rise to this action occurred wholly within Belknap County.

### FACTS

17. Plaintiff, William Spencer, is employed by Spencer Bros. LLC.

18. Spencer Bros. LLC is a family business of thirty-seven years, engaged in the business of removal, installation, cleaning, transporting, and properly disposing of cleaned and purged oil tanks and other tanks. Approximately 90% of the company's revenue is generated by legally removing, installing, and disposing of properly purged tanks.

19. William Spencer is the only driver for Spencer Bros LLC.

20. Since 2016 William Spencer has been the target of constitutional violations by the New Hampshire State Police and related agencies.

21. As this conspiracy continued the parties involved participated in obstruction of justice, perjury and other federal crimes in order to cover up and perpetuate the retaliation.

22. The Defendant's actions and cover up are all documented in a number of statements and reports, most of which include purposeful falsehoods given for the purpose of misleading tribunals and covering up the malfeasance of the entire scheme.

23. On April 29, 2016, while on duty, Plaintiff was driving a 2004 Chevrolet Express 3500 Box Truck. Plaintiff considered the vehicle to have a GVW of 9,600 lbs because the prior registration read 9,600 GVW.

24. On April 29, 2016, Spencer was pulled over by Defendant, New Hampshire State Trooper Michael Doran ("Trooper Doran") in the State of New Hampshire.

25. At the time of the stop, the Plaintiff's cargo consisted of four tanks containing a small amount of rusty water, one properly cut, cleaned and purged oil tank, one discarded oil-fired hot water tank, and [5] 5 five-gallon pails, all of which permeated with an odor of home heating oil. This particular cargo and all prior cargo carried in this vehicle included properly cut, cleaned, and purged tanks.

26. Due to their odiferous nature, as well as the fact that this type of cargo has been transported countless times in the vehicle in question, the cab and the box component has a permanent odor of home heating oil, but not Hazmat.

27. Trooper Doran was immediately hostile to the Plaintiff.

28. Trooper Doran demanded to see the license of the Plaintiff and the registration for the vehicle, which the Plaintiff immediately provided.

29. Trooper Doran went to his SUV. Upon return, Trooper Doran stated to the Plaintiff that he determined that the vehicle he was operating is a commercial motor vehicle (CMV) and that it exceeded 10,001 lbs GVW, which is considered as a CMV.

30. This was false the vehicle had a weight of 9,600 lbs as later confirmed by the NH DMV.

31. At the time of the stop the Plaintiff explained to Trooper Doran that the Town of Gilford clerk and the NH DMV were in agreement that the vehicle is 9,600 lbs GVW.

32. At the time of the stop, the Plaintiff was renting a home in Laconia, NH owned by Trooper Stephanie Bosch of the NH State Police.

33. Alarmed by Trooper Doran's conduct, the Plaintiff called Trooper Bosch while sitting on the side of the road with a hope that she might contact Trooper Doran and "vouch" for the Plaintiff only as a tenant in good standing with her, and nothing more. The Plaintiff hoped that call from Trooper Bosch would deescalate Trooper Doran.

34. Trooper Bosch did comply with Plaintiff's request to call Trooper Doran at the time of the stop.

35. Contrary to the false claim by Trooper Doran within 'Driver/Vehicle Examination Report' that Trooper Bosch alleged that the Plaintiff "would not stop calling her," The phone call to Trooper Bosch was cordial and short.

36. Trooper Doran upon returning to the Plaintiff's vehicle after speaking with Trooper Bosch once again became unhinged toward the Plaintiff as he threatened the Plaintiff with arrest and the subsequent loss of his commercial driver's license (CDL) if he made one more "f----g" phone call, thus denying the Plaintiff a call to his attorney.

37. Contrary to the false description by Trooper Doran within 'Declaration of Michael Doran,' the Plaintiff was not picking up "fuel oil tanks from neighbors of his mom."[1]

38. The Plaintiff made it clear to Trooper Doran that he had picked up a discarded *hot water heater* from a neighbor of his late mother.

39. Contrary to the claims of Trooper Doran in his differing reports, Otto is not the brother of the Plaintiff, nor is he his partner nor is he an employee.

---

[1] (Declaration of Michael Doran, 2016)

40. Trooper Doran stated that the Plaintiff was paid to transport the tanks. At the time of the stop, the Plaintiff had not yet been paid for the tanks.

41. Plaintiff was extremely intimidated as he complied with Trooper Doran's demands.

42. While standing in close proximity to Trooper Doran, Trooper Doran commented to the Plaintiff concerning his detection of an odor. The Plaintiff informed Trooper Doran that his clothes smelled of home heating oil because he had previously and properly pumped, cleaned, and purged a tank prior to the traffic stop. The Plaintiff did not declare his clothing to be the only source of the odor.

43. Trooper Doran screamed at the Plaintiff and ordered the Plaintiff to open the rear door of the vehicle's box.

44. The Plaintiff, cooperating with Trooper Doran's demand, opened the rear door of the vehicle and held the door open while Trooper Doran took photographs of the interior of the box. The photographs are the only evidence Trooper Doran collected or documented relating to the contents of the box.

45. Trooper Doran returned from his SUV and announced to the Plaintiff that the vehicle was ordered 'out of service' and that his truck would be immediately towed.

46. Trooper Doran issued the Plaintiff a "fix-it" ticket for the replacement of a blown reverse light bulb and for a non-affixed fire extinguisher. The fire extinguisher, at the time of the traffic stop, was in the cab, but non-affixed.[2]

47. The rules and regulations governing a motor vehicle that has a GVW of less than 10,001 lbs do not mandate the affixing of a fire extinguisher. The vehicle operated by the Plaintiff was documented by two governmental entities as having a GVW of 9,600 lbs.

48. Plaintiff asked Trooper Doran as to what company would be towing the truck. Trooper

---

[2] (Doran, Out of Service Order, 2016)

Doran replied that it would be Rochester Truck, a tow company based out of Rochester, NH. The Plaintiff responded by politely informing Trooper Doran that he had a past civil action against Rochester Truck and asked if it would be possible to use another tow company.

49. After the Plaintiff explained the civil suit to Trooper Doran, he flatly denied the Plaintiff's request and was more determined to call Rochester Truck, which was later found to be owned by a friend of Trooper Doran's.[3]

50. As the Plaintiff and his witness rode with the tow company's driver, the general conversation in the cab of the tow truck centered on the fact that the tow driver is Trooper Doran's personal motorcycle mechanic at Rochester Truck.

51. On April 30, 2016, a Saturday, Trooper Doran set out to find the Plaintiff's truck by driving by the site of where it was towed to the previous day, Tire Guys in Farmington, NH.

52. It is not clear as to whether it was the Trooper Doran's day off or if he was on duty. The NHSP declined to answer the Plaintiff's inquiry into this question through a formal 91-A submission.

53. The statements by the Plaintiff concerning Trooper Doran's conduct are supported by a witness, Ed Otto, who was never interviewed by the NHSP Internal Affairs/Standards and Practices Department or the NH Attorney General's Office for NH.

54. Rob Follensbee, owner of Extreme Auto, a NH Inspection Station in good standing, was hired to replace the blown reverse light and affix a fire extinguisher, which was already in the Plaintiff's truck, and sign off on the fix-it ticket issued to the Plaintiff.

55. On May 13, 2016, Trooper Doran, Kenneth Chaput, and a third unidentified person of the

---

[3] (Troop A, History Events, 2016)

NH Department of Safety converged on Follansbee's place of business known as Extreme Auto in Belmont NH to conduct what they characterized as a "follow up" inspection of Follansbee's premises.[4]

56. Kenneth Chaput is misidentified as a NH State Trooper by AAG for <u>Public Protection</u> Wolford and Investigator Vachon. Mr. Chaput is an automotive equipment inspector with the Department of Safety.[56]

57. Chaput claims in sworn testimony to the NH Assistant Attorney General for <u>Public Protection</u>, Lisa Wolford that "it was just one of those things" when asked why he and Trooper Doran just "happened"[7] to show up at Extreme Auto at the exact same time on that day.

58. This is in direct conflict with an e-mail on May 9th from Trooper Doran to Mike McQuade, of the NHSP.[8] In the e-mail, prior to the visit, Trooper Doran asked McQuade for an AEI to accompany him to Extreme, four days prior to when he converged on Follensbee's business. It was an arranged meeting between the three to go there.

59. Chaput in his testimony claims that he asked for his supervisor's permission to go to Extreme Auto on May 13, 2016.

60. For two hours, Trooper Doran, Kenneth Chaput, and a third unidentified person kept Follansbee captive with a barrage of threats and other forms of harassment under the guise of a "follow up."

61. While at Follensbee's place of business, Trooper Doran caused property damage to one of Follensbee's trucks during his visit, an unused plowtruck parked in the rear of Extreme

---

[4] (Recording of William Burke on November 29, 2017)
[5] (Vachon, Continuation of Investigation/Arrest Report - Stuart, 2017)
[6] (Vachon, Continuation of Investigation/Arrest Report - Follensbee, 2017)
[7] (Recording of Kenneth Chaput on November 29, 2017)
[8] (Doran, McQuade E-Mail 2016)

Auto's building. This is confirmed by Follensbee's testimony on August 21, 2017.[9] Chaput was inspecting Extreme Auto's Inspection Machine while Trooper Doran walked around the Extreme Auto's building and grounds with Follensbee.

62. Chaput testified about "issues" he allegedly found at Extreme Auto that day.[10]

63. Chaput testified that Follensbee "painted" the lenses on this plow truck. This is false and without merit, Follensbee did not apply paint to his lenses.

64. Chaput never utilized the instrument he is supposed to use in the course of his duties in order to do a "proper inspection." The instrument measures the shading and tinting of glass and lenses to determine whether it is legal or not.

65. Chaput did not use the instrument that day ensuring a "proper state inspection" as he repeats throughout his testimony.

66. Follensbee purchased the "lenses" in question from an auto parts store that sells legal and legitimate auto accessories in NH.

67. Chaput stated in the same testimony that Follensbee allegedly drove the aforementioned plow-truck to work that day. Chaput has no basis for this claim. At that time, the plow truck was being used only as a plow truck for his business's yard during the previous winter of 2016.

68. Chaput has stated under oath that he has not gone back to Extreme Auto because he didn't think Follensbee would be happy to see him "cause of this whole thing."[11]

69. Chaput was not clear as to what "cause of this whole thing" meant when he testified. Chaput said he was to go back to Extreme Auto 30 days after the initial visit.

70. Chaput never went back to Extreme Auto thirty days after the initial visit as he indicated

---

[9] (Recording of William Burke on November 29, 2017)
[10] (Recording of Kenneth Chaput on November 29, 2017)
[11] (Recording of Kenneth Chaput on November 29, 2017)

in his report.

71. This follow up visit was retaliation against the Plaintiff. The proximity of the visit to the initial stop as well as the adversarial nature of the visit points to this inspection being a part of the systematic harassment of the Plaintiff.

72. After the traffic stop on April 29, 2016 and the ordeal that Mr. Follensbee was subjected to on May 13, 2016, the Plaintiff was so distressed by Trooper Doran's conduct that he contacted the NHSP Internal Affairs/Standards and Practices Department and spoke with Sgt. Andy Macaione. The Plaintiff requested an investigation into Trooper Doran's disturbing conduct during this traffic stop.

73. The Plaintiff waited to be contacted by Sgt. Macaione to provide a statement or to be interviewed by Internal/Affairs Standards and Practices as it related to the Trooper's conduct.

74. There was never any contact or interview conducted by Internal/Affairs Standards and Practices with the Plaintiff or the witness, Otto.

75. Seemingly prompted by the Plaintiff's follow up phone call to the NHSP Internal Affairs/Standards and Practices Department, the Plaintiff eventually received a letter from the NHSP Internal Affairs/Standards and Practices (sent to the wrong address, with no return receipt, and with no confidentiality; all of which compromised the Plaintiff's anonymity to the residents at the Belmont location where it was carelessly sent) stating that the Plaintiff's accusations concerning the conduct of Trooper Doran during the traffic stop were "unfounded."[12]

76. The conspiracy against the Plaintiff extended to the Federal Motor Carrier Safety Administration who began to look into Spencer Bros LLC at the request of the State

---

[12] (Mullen, Unfounded Letter – Doran, 2016)

Police.Prior to contacting the Plaintiff on the morning of June 13, 2016, agents of the Federal Motor Carrier Safety Administration (FMCSA) canvassed the private property that houses the employer of the Plaintiff, Spencer Bros. LLC garage and office space that they rent at 116 Hounsell Avenue, Laconia, NH.

77. The agents took photographs of the grounds, buildings, and vehicles on the private premise. At one point, the agents interrupted a neighborin) in the midst of his duties with questions concerning the whereabouts of the Plaintiff. This caused embarrassment and unwarranted grief for the Plaintiff.

78. FMCSA Agent Wood called the Plaintiff on the morning of June 13, 2016. Agent Wood asked to meet with Plaintiff and discuss the stop and the ticket issued by Trooper Michael Doran on April 29, 2016. The Plaintiff was one hour away on a jobsite and quickly returned to the Spencer Bros. LLC office to meet with them the same day.

79. Agent Wood, of the FMCSA, is a former State Trooper and former NH State Police colleague of Trooper Doran and Sgt. Burke.Upon information and belief Agent Wood was investigating Spencer Bros. LLC at the request of Trooper Doran and Sgt. Burke and part of a concerted plan to harass the Plaintiffs and destroy their business.

80. Shortly after their arrival, the Plaintiff realized that the stated intent of this meeting – to discuss the traffic stop of April 29, 2016 – was a ruse.

81. During this brief meeting, Agent Gray, without permission from the Plaintiff or the Plaintiff's employer, boldly attempted to gain access to a closed filing cabinet that contained the confidential files of the Plaintiff's employer.

82. The plaintiff politely, but firmly, verbally thwarted Agent Gray's attempt to gain access to the confidential files.

83. The rebuke of Agent Gray, by the Plaintiff, resulted in both Agents becoming agitated.

84. Agent Gray hastily slid a demand letter and a subpoena, addressed to the Plaintiff's employer, across the conference table toward the Plaintiff.

85. The demand letter and subpoena demanded documents from Spencer Bros. LLC, only.

86. At no point, did Agent Wood or Gray request access to enter the garage attached to the office. The FMCSA agents were in the Plaintiff's place of business for approximately 8 minutes.

87. At no point, did Agent Wood and Gray attempt to contact the Member Managers that own and operate Spencer Bros. LCC. The agents admitted they went to the NH Secretary of State's website, prior to their appearance in Spencer Bros. LLC's office.[13]

88. The NH Secretary of State's website clearly indicates that the Plaintiff does not own the company.

89. Per the testimony of Sgt. William Burke of the NHSP, after the brief meeting with the Plaintiff, the Agents left the office of the Plaintiff's employer (116 Hounsell Avenue, Laconia, NH.) and called him from the property.

90. Sgt. Burke testified under oath that he is 95% sure that FMCSA Agent Gray called him, still leaving a 5% possibility the call came from FMCSA Doug Wood, a former state trooper co-worker of Sgt. Burke and Trooper Doran.

91. Sgt. Burke filed a false report with the New Hampshire Department of Environmental Services (NHDES).

92. Sgt. Burke called to report that Agents from FMCSA visited Spencer Bros. in Laconia as a follow-up to a motor vehicle division traffic stop. Sgt. Burke alleged that Agents Wood and Gray reported that during the visit they were nearly overcome with petroleum fumes

---

[13] (Gray, E-Mail Thread with Burke, Boothby, and Piwowarski, 2016)

inside the building.

93. Furthermore, Sgt. Burke relayed damaging information that the company rinses petroleum tanks inside the building and discharges the rinsate to a floor drain.[14]

94. The Plaintiff was able to obtain a copy of the report from NHDES. It would appear that the document was intended to remain in-house as evidenced by the fact that the phone numbers for Doug Wood, Chris Gray, and William Burke are noted. The inclusion of the phone numbers speaks to how involved and invested they were in the outcome reached by NHDES at the conclusion of an unwarranted investigation of the Plaintiff and his employer.

95. Per Sgt. Burkes sworn testimony, he says the agents called from Spencer Bros. LLC facility and he in turn immediately called NHDES Robert Bishop about alleged "overwhelming fumes" in the office of the Plaintiff's employer.

96. Sgt. Burke said he called NHDES, while he was at home, two minutes after he allegedly spoke with Agent Gray, most likely Agent Woods, from the Plaintiff's place of employment, which would be in conflict with the time of 1:38pm on the false report.

97. At no point did the FMCSA indicate in any of their reports of June 13, 2016 that they were allegedly overcome by fumes as described in the handwritten reports by NHDES Robert Bishop, nor does it speak of any illegal activity by the Plaintiff or his employer.[15]

98. Prior to the initial meeting on the morning of June 13, 2016 with the Plaintiff, the FMCSA visited Spencer Bros. LLC competitor ENPRO inquiring as to whether the Plaintiff and the Plaintiff's employer buy their DOT barrels from them and that they (Plaintiff/Plaintiff's employer) are under investigation by the FMCSA. The FMCSA

---

[14] (Bishop, Waste Management Division - Record of Telephone Conversation, 2016)
[15] (Bishop, Waste Management Division - Record of Telephone Conversation, 2016)

Agents had yet to meet with the Plaintiff or the Plaintiff's employer in order to ascertain from where the company purchases their barrels.

99. The FMCSA caused harm and embarrassment to the Plaintiff and his employer as they contacted various companies prior to the first meeting in the office of the Plaintiff's employer, Spencer Bros. LLC, on June 13, 2016.

100.    Several days after serving a subpoena and demand letter, the FMCSA contacted, in person, Trombly Enterprises LLC (aka Bill Trombly Plumbing and Heating) at their location and spoke with a company official at their office. While at Trombly's office, the FMCSA obtained a vague statement from an employee, a warehouse manager, of Trombly who "allegedly" interacted with the Plaintiff.

101.    Following the appearance of the FMCSA at Trombly Enterprises LLC, a "tech" employed by Trombly spoke with the Plaintiff and inquired as to whether the Plaintiff "was still in trouble" with the FMCSA.

102.    He asked the Plaintiff because the FMCSA Agents went to Trombly Enterprises LLC (a customer that the Plaintiff willingly supplied the address to the agents) and said they were there to investigate the Plaintiff for illegally dumping tanks.

103.    The actions of the Agents in their casting of false aspersions against the Plaintiff and Plaintiff have caused embarrassment and loss of standing.

104.    The Plaintiffs sent a FOIA (Freedom of Information Act) request to the FMCSA asking for information that would allow the Plaintiffs to reach out to these various companies contacted by the FMCSA, mend their relationships, and defend their good name.

105.    On June 28, 2016, the Plaintiff complied with the demand letter and subpoena

(served on June 13, 2016) to appear at the Concord Division headquarters for the FMCSA with the demanded documents; Plaintiff was accompanied by retired State Trooper Wayne Peasley (hired as a compliance consultant) to attend this meeting. The Plaintiff attended this meeting in good faith.

106.    At this meeting attended by Agents Wood and Gray, Retired Trooper Peasley asked both agents, point blank, as to whether Trooper Doran collected any evidence of hazardous materials that he alleged that the Plaintiff was transporting on April 29, 2016.[16] Agent Gray abruptly left the meeting room.

107.    Upon Agent Gray's return, Agent Wood declared that the meeting was over. This entire matter should have been dismissed at this point due to lack of samples collected to substantiate the alleged presence of hazmat on April 29, 2016.

108.    For the second time, the FMCSA Agents did not allow the Plaintiff to explain his day-to-day duties.

109.    As a result of the false report called in by Sgt. Burke, from his home, on June 13, 2016, David Degler, of NHDES, inspected the facility of the Plaintiff's employer. Degler NHDES found these damaging accusations to be unfounded. [17]This unwarranted scrutiny (instigated by Sgt. Burke's animus towards the Plaintiff) from NHDES, caused the Plaintiff embarrassment and further aggravation.

110.    Prior to inspecting the facility, Degler canvassed the facility at 116 Hounsell Avenue because of the false report filed by Sgt. Burke. Degler visited a neighboring tenant (the Plaintiff's landlord) at the location interrupting him asking for the whereabouts of the Plaintiff.

---

[16] (Recording of Wayne Peasley on May 26, 2017)
[17] (Bishop, Site Investigation Summary Report, 2016)

111.    Degler reports that the doors on the Plaintiff's employer's private vehicles are "locked."

112.    The statement indicates that Degler would have searched the interiors of the trucks if they were not locked. The private vehicles of the Plaintiffs' were not mentioned in the false report. This was not an emergency.

113.    NHDES Degler stood in the parking lot in front of all neighboring tenants and took pictures and asked questions of the landlord. This caused unwarranted attention to the Plaintiff and the Plaintiff's employer. Also in the report, Degler found it necessary to include the erroneous fact that the Plaintiff was selling a couple of tanks on line.

114.    Sgt. Burke knew when he filed this false report it would cause an investigation and unwarranted scrutiny of the Plaintiff and the Plaintiff's employer.  This unwarranted scrutiny, (instigated by Sgt. Burke), from NHDES, caused the Plaintiff embarrassment and further aggravation.

115.    Once the Plaintiff found out that Sgt. Burke initiated this false investigation, the Plaintiff, once again, contacted the NHSP Internal/Affairs Standards and Practices Division.

116.    In a letter dated January 17, 2017, Lieutenant John Mullen informed the Plaintiff that his allegation was "unfounded" when it came to an allegation that "Sergeant Burke reported false information regarding an oil spill during an investigation to which you were a party."

117.    This is a gross mischaracterization. The Plaintiff contacted Internal/Affairs Standards and Practices to inform them that Sgt. Burke maliciously initiated an NHDES

investigation, against the Plaintiff, with intentionally false information.[18]

118.    Steve Piwowarski of the Concord Division of the FMCSA, as the supervisor of Agents Wood and Gray, bears responsibility for overseeing subordinates in his charge. Piwowarski had the opportunity to stop this investigation. The Plaintiff discussed numerous times with Piwowarski if his department could offer some relief from these false accusations and charges. Plaintiff requested that the 'Out of Service' orders be lifted. Piwowarski was privy to the fact that a false report had been filed by Sgt. Burke, from his home, based on alleged information furnished by his agents, Wood and Gray. The Plaintiff also explained to Piwowarski that Trooper Doran failed to collect any samples of "alleged" hazmat. Piwowarski refused to lift the 'Out of Service' order.

119.    On October 4, 2016, Piwowarski e-mailed Bishop inquiring as to whether there are "any NH DES procedures he must follow in dealing with the water/cleaner used and how it must be disposed of and is there any paperwork that goes with the process, sort of like the EPA's hazardous waste manifest requirements?"[19]

120.    Piwowarski demonstrates in this e-mail that he is unaware of the laws, protocols and procedures as they pertain to this matter, which is at the heart of the allegations against the Plaintiff by his department and other law enforcement agencies.

In late 2017, Plaintiff initiated a FOIA (Freedom of Information Act) request with Steve Piwowarski, as of December 18, 2018 (date of Plaintiff's lawsuit) this request has remained unanswered.[20]

---

[18] (Mullen, Unfounded Letter – Burke, 2017)
[19] (Piwowarski & Bishop, E-Mail Thread, 2016)
[20] (FMCSA FOIA Office, FOIA E-Mail to William Spencer, 2017)

121.    Attempting to gather information related to this matter, the Plaintiff on multiple occasions has submitted formal FOIA and 91-A (aka NH Right to Know) requests for information he considers relevant to him and his employer.

122.    On August 22, 2018 the Plaintiff called New Hampshire State Police Attorney David Hilts. During this conversation, Attorney Hilts told the Plaintiff that he could not process his 91-A requests due to a "litigation hold."[21]  At the time of these requests, no litigation had been initiated by the Plaintiff against the Defendants or vice versa.

123.    Immediately after being denied this information by Hilts, the Plaintiff called Governor Sununu's Office of Citizens Services employees Pam Cataluono and Jen Smith to once again highlight this continued retaliation and misinformation. There was no litigation at that time and the Plaintiff will never ascertain what information he could have obtained.

124.    The Plaintiff also called the NH Attorney General's Office to inquire about this "litigation hold" and left a detailed message and the Plaintiff has not received a response as of December 18, 2018, the last date before the Plaintiff initiated this civil action.

125.    The Plaintiff informed FMCSA Attorney Campise that these sloppy, self-serving, and incorrect reports were intentionally filed to retaliate and to support the false narratives of the NHSP and FMCSA. Much of the case of the FMCSA is predicated on these false reports and a total lack of evidence from Trooper Doran's traffic stop on April 29, 2016.

126.    Attorney Campise had the opportunity to review and investigate the legitimate claims of the Plaintiff as well as the fabricated statements reported by members of the FMCSA and NHSP, as well the fact that Sgt. Burke filed a false report to NHDES in

---

[21] (Hilts, E-Mail to Spencer, 2018)

order to injure the Plaintiff and Plaintiff's employer. The Plaintiff's former Attorney, Michael Iacopino, made Attorney Campise aware of the same claims of false statements made by the FMCSA and NHSP. Throughout this imposed 'out of service' order, the Plaintiff has suffered significant financial hardship due to the costly representation retained in order to defend himself and his good name.

127.    On October 12, 2016, Agents Tanya Chavez and Jason Hernandes, of the DOT Office of the Inspector General, interviewed the Plaintiff at his place of employment at 116 Hounsell Avenue Laconia, NH. Agents Chavez and Hernandes were escorted through the garage and were shown that in fact no floor drains existed in the floor of the garage, contrary to the false reporting of Sgt. Burke, supported with false information from Agents Wood and Gray.

128.    Following the meeting with Agents Chavez and Hernandes, Todd Damiani of the Massachusetts DOT OIG, authored a report, using untrue information that was supplied to him by Agents Chavez and Hernandes, and of his own creation that was self-serving for the FMCSA and riddled with falsehoods and inaccuracies, that support the false narratives alleged by Sgt. Burke, as well as Agents Wood and Agent Gray.

129.    None of the reporting by Chavez/Hernandes, nor Damiani, includes the indisputable fact that there are not, nor ever were there any floor drains in the garage or shop of 116 Hounsell Avenue, Laconia, NH.

130.    On October 13, 2016, Robert Bishop of NHDES informed both Sgt. Burke and Piwowarski, in separate communications, that rusty water within the tanks is not classified as hazmat.[22]

---

[21] (Bishop, E-Mail to Burke, 2016)

131.    Sgt. Burke contacted Robert Bishop on October 13, 2016 seemingly prompting an email to be sent from Bishop attempting to reword the language Sgt. Burke used when he called in the false report from his home on June 13, 2016. This e-mail introduced two new descriptors "suspicion" and "potential" that were absent from the original false report by Sgt. Burke, when describing the motive for Sgt. Burke placing a call to Bishop on June 13, 2016 alleging false and unsubstantiated misdeeds by the Plaintiff and the Plaintiff's employer.

132.    In a memo also dated October 13, 2016, Plaintiff was notified by the NHDMV of a hearing to suspend the expired registrations registered to the Spencer Bros. LLC vehicles.[23]

133.    On November 2, 2016, five days prior to the hearing, the Plaintiff requested in writing that Trooper Doran, a direct witness, attend the hearing in order to be available for questioning. Plaintiff attended the hearing with two attorneys only to discover that New Hampshire DMV Hearing Officer King would not allow Trooper Doran to attend this hearing and ultimately be questioned by the Plaintiff and his attorneys, although Trooper Doran was seen in the lobby of the building.

134.    Retired Trooper Stephen Kace attended this hearing to represent the State of New Hampshire but witness Trooper Doran would have been an important and vital attendee. Retired Trooper Kace vociferously argued against the Plaintiff throughout the proceeding seeking to restrict the Plaintiff by suspending already expired license plates.  At the conclusion of the hearing, a very agitated and frustrated Ret. Trooper Kace exited the hearing.  The Plaintiff also exited the hearing with his two attorneys. As the Plaintiff

---

[23] (NOTICE OF HEARING, 2016)

exited the parking lot on that afternoon, he intended to finish his workday and keep his appointments as scheduled.

135.    November 2, 2016, at 11:09 am, two hours prior to the administrative hearing, retired Trooper Kace requested a "copy of all vehicles registered to:" Spencer Bros. LLC, William Spencer, and Griffin Spencer prior to the 1:00pm hearing that day.[24]

136.    As the Plaintiff travelled toward his afternoon job appointment, he noticed a vehicle tailgating his vehicle.  He noticed this vehicle because it was following dangerously and illegally too close to his. The aforementioned vehicle was mirroring the movement of the Plaintiff's employer's vehicle as he drove.

137.    After having been tailgated for four to five miles, the driver of the tailgating vehicle flashed the truck's headlights several times at the Plaintiff's employer's vehicle. The Plaintiff was alarmed and immediately, but safely, pulled his vehicle to the shoulder of road.  The Plaintiff noticed a white Ford pickup truck immediately pull in behind his vehicle.

138.    The Plaintiff exited his vehicle fearful that the back door of his box truck might have inadvertently been left open or something to that effect. The Plaintiff then turned toward the man who was operating the white Ford truck to inquire as to why he was following him too closely and attempting to "get his attention" as he drove. The man, later identified as retired Trooper Kace, immediately opened his driver's door and exclaimed that the Plaintiff was under arrest for operating an 'out of service' vehicle.

139.    The Plaintiff exchanged words with retired Trooper Kace.  While speaking with retired Trooper Kace, the Plaintiff exclaimed that his "tags" were not expired and that the vehicle he was operating was not under an 'out of service' order. Plaintiff immediately

---

[24] (Kace, E-Mail, 2016)

left the scene while retired Trooper Kace remained parked on the side of the road. Trooper Doran could be heard in the distance pursuing the Plaintiff with sirens.

140.   The Plaintiff immediately contacted Lt. Nicole Armaganian of the NHSP and explained to her the chase in detail.

141.   When asked by Lt. Armaganian as to who had witnessed this harassment, the Plaintiff informed the Lieutenant that the witness is a fellow employee of Spencer Bros. LLC, Lt. Armaganian quipped as to whether the witness was the "same" witness as the one from the traffic stop on April 29, 2016. The Plaintiff informed her that this witness was not the same witness as the one who witnessed Trooper Doran's misconduct on April 29, 2016.

142.   Lt. Armaganian demanded to know the name of the witness. Lt. Armaganian informed Plaintiff that the investigation would be considered "closed" if he did not provide the name of the witness who observed the chase with retired Trooper Kace and Trooper Doran. Lt. Armaganian closed the investigation that day.

143.   Lt. Nicole Armaganian is a witness to the chase "in real time" involving retired Trooper Kace, considering that the Plaintiff called her as he was being pursued by Trooper Doran.

144.   The Plaintiff considers that the Lieutenant did not assist him in this matter regarding the ambush by retired Trooper Kace and failed to offer a remedy in the form of an investigation for this harassment and retaliation. Lt. Armaganian closed the investigation that day. Prior to the DMV hearing Ret. Trooper Kace requested a copy of the Plaintiff's registration record which indicated without a doubt the fact the Plaintiff's "tags" were not expired, therefore, Ret. Trooper Kace did not have cause to chase the

Plaintiff other than to harass him. Trooper Doran was dispatched in order to pursue the Plaintiff with lights and sirens to harass and detain the Plaintiff in violation of his constitutional rights. The Plaintiff considers this harassment to be premeditated and only served to intimidate him. Trooper Kace only states in his audio that the Plaintiff is operating an 'out of service' vehicle. Trooper Kace does not indicate that he suspects that the Plaintiff is violating any other laws.

145.    In 2017, the Plaintiff contacted the Federal Bureau of Investigation (FBI) in order to investigate those involved in this matter. The Plaintiff was assigned Agent Mark Hastbacka who met with the Plaintiff.

146.    The FBI did not aid the Plaintiff.

147.    In 2016, the Plaintiff conducted an initial outreach, via telephone, to the NH Attorney General's Office, (prior to AAG for Public Protection Wolford entering the investigation) seeking assistance related to the misconduct by Trooper Doran and the NHSP. The Plaintiff spoke with Det. Richard Tracy via telephone.

148.    The Plaintiff and Det. Tracy engaged in a very brief telephone conversation that led Det. Tracy to quickly become hostile when the Plaintiff discussed his traffic stop and subsequent misconduct by Trooper Doran.

149.    Once presented with these allegations, Det. Tracy asked the Plaintiff "have you ever been arrested".

150.    Months after the meeting, the Plaintiff discovered that Senior Investigator Richard Tracy of the New Hampshire Attorney General's Office generated an e-mail thread with at least 20 local law enforcement and state employees as recipients.[25]

---

[25] (Tracy & Hastbacka, E-Mail Thread, 2017)

151.    This e-mail dated March 1, 2017, from Det. Tracy, to Agent Hastbacka, lays bare the Plaintiff's outreach to the FBI and their vulnerability concerning their very unsettling situation with the Defendants. Because of Senior Investigator Tracy's lack of judgment, numerous unrelated agencies became privy to this outreach by the Plaintiff.

152.    Senior Investigator Tracy carelessly mentioned the Plaintiff, by name, and that he was meeting with the FBI.

153.    Det. Tracy had no possible way of knowing whether any of the recipients in the e-mail thread were part of any potential discussion between the Plaintiff and Agent Hastbacka.

154.    The Plaintiff had not yet had the chance to meet with Agent Hastbacka and yet Det. Tracy was involved and already emailing using the Plaintiff's name. Mark Hastbacka writes disparagingly before the meeting as he writes about the Plaintiff and the witnesses the Plaintiff "claims" to have.[26]

155.    In April, 2017, a meeting was called by the staff of the Governor of New Hampshire at the behest of the Plaintiff to meet again (Plaintiff had a prior meeting regarding this continuing issue) with representatives of Governor John Sununu's Office of Citizen Services to discuss this matter concerning the Plaintiff's interactions the New Hampshire State Police. Investigator Mark Myrdek of the New Hampshire Attorney General's Office, a former NH State Trooper, attended the meeting on behalf of the AG's office.

156.    Mark Myrdek authored report riddled with false information. In the Overview portion of Myrdek's memo, Myrdek writes "as a result of this stop Trooper Doran further found that W.Spencer was carrying hazardous materials in the form of cut and uncut

---

[26] (Tracy & Hastbacka, E-Mail Thread, 2017)

tanks."[27] Myrdek does not use the phrase "allegedly carrying hazmat" as he should have. He writes biased information only to support Trooper Doran.

157.    Myrdek goes on to incorrectly report in this memo that "NHDES has targeted and investigated associates of the Plaintiff."[28]    That is not true. Nothing regarding the targeting of his associates by NHDES was reported by the Plaintiff to him.    The Plaintiff's associates were targeted by the NH State Police not the NHDES. The Plaintiff considers that style of misreporting to be common when dealing with various NH State agencies.

158.    In Mark Myrdek's memo he mentions the existence of another memo, which was authored by Chief Investigator Tracy.[29] The Plaintiff did not receive the secondary memo. This memo should have accompanied the memo written by Myrdek. This memo was a report written by Tracy based on the telephone conversation Tracy had with the Plaintiff.

159.    Myrdek continues the misinformation by reporting that the federal investigators "attempted to inspect" Mr. Spencer's business. The misinformation continues as Myrdek writes that he reported to DES what he was told by federal investigators "after they inspected" Mr. Spencer's business.    Mr. Spencer (the Plaintiff) does not own Spencer Bros. LLC.    Myrdek reports the agents "inspected" the "business" then he reports they "attempted to inspect" the "business," Myrdek cannot have it both ways. Myrdek issued inaccurate reports supporting law enforcement.    Myrdek acts secretive by not attaching the memo reporting the conversation between Det. Tracy and the Plaintiff.

---

[27] (Myrdek, Memorandum, 2017)
[28] (Myrdek, Memorandum, 2017)
[29] (Myrdek, Memorandum, 2017)

160.    Later in May 2017, the Plaintiff was contacted by the Office of the Attorney
General for the State of New Hampshire in order to investigate the claims of the Plaintiff
concerning the conduct of Trooper Doran, Sgt. Burke, retired Trooper Kace, Lieutenant
Armaganian, Chaput, Agent Wood, Agent Gray, and the New Hampshire State Police. As
result of this request, Assistant Attorney General for Public Protection Wolford was
assigned to investigate the matter.

161.    At no point during her investigation, did she, or a member of the Attorney
General's staff, interview Trooper Doran, who is the impetus for this whole matter and
initiated this campaign of retaliation against the Plaintiff.

162.    On November 14, 2017, an 11th hour alleged testimony was taken by Investigator
Vachon, of the New Hampshire Attorney General's office, from Cody Stuart, of Belmont,
NH. Mr. Stuart is a former employee of witness Rob Follensbee, owner of Extreme Auto
in Belmont, NH.[30]

163.    Mr. Stuart, while admitting that he "did not see what happened"[31] supposedly
heard from Mr. Follensbee that the "state inspector took the sticker off the truck, pulled at
the door and caused damage." Furthermore, Investigator Vachon alleges "STUART
stated he did not see this happen but that he got an explanation from Follensbee."

164.    Mr. Stuart was not a witness to the conduct of Trooper Doran and Mr. Chaput.

165.    In her report, AAG for Public Protection Wolford readily states that Mr.
Follensbee's credibility is "compromised." However, Investigator Vachon readily took an
alleged statement from Mr. Stuart that is entirely based on hearsay that is alleged to have
come from Mr. Follensbee, where he stated that the "state inspector took the sticker off

---

[30] (Vachon, "Continuation of Investigation/Arrest Report, 2017)
[31] (Vachon, "Continuation of Investigation/Arrest Report, 2017)

the truck, pulled at the door and caused damage."[32] Furthermore, Investigator Vachon

alleges "STUART stated he did not see this happen but that he got an explanation from

Follensbee."[33]

166.    During Sgt. Burke's testimony, AAG for <u>Public Protection</u> Wolford can be heard

offering help and opined as to what transpired to Sgt. Burke as he struggles to express his

memory during his testimony. Sgt. Burke is heard expressing his appreciation for the help

he received from AAG for Public Protection Wolford for ascribing the word "suspicious"

as he was testifying, thus attempting to change the overall tone when describing the

motive for Sgt. Burke filing the false report with NHDES. This description, by Sgt.

Burke, is categorically false when observing the contents of the false report, which

clearly shows that Sgt. Burke stated in his allegation that Plaintiff was pouring petroleum

and rinsate into floor drains in the Plaintiff's employer's garage bay.

167.    At no point was the word "suspicious" or "potential" or "possible" ever used in

the false report concocted by Sgt. Burke from his home and called in to NHDES Robert

Bishop on June 13, 2016.

168.    On May 30, 2017, during AAG for <u>Public Protection</u> Wolford's visit to the offices

of Spencer Bros. LLC to interview the Plaintiff, she conceded that the allegations

concerning the floor drains referenced in the report filed by Sgt. Burke to be false.[34] That

allegation by Sgt. Burke was the impetus for the investigation conducted by NHDES.[35]

169.    Each investigation involving police misconduct by the NH State Police Office of

Internal Affairs was one-sided. The Plaintiff was never interviewed. Three investigations

---

[32] (Vachon, "Continuation of Investigation/Arrest Report, 2017)
[33] (Vachon, "Continuation of Investigation/Arrest Report, 2017)
[34] (Recording of William Spencer on May 30, 2017)
[35] (Recording of William Spencer on May 30, 2017)

ended with the same outcome: the allegations of misconduct on part of the State Police were deemed "unfounded."

170.    On June 23, 2017, Trooper Derek Holston conducted a motor vehicle stop of a competitor of the Plaintiff's employer, Spencer Bros. LLC.

171.    Trooper Holston told the competitor the reason he was being stopped was because, in so many words, another competitor in the Lakes Region who has been involved with the FMCSA of late "ratted him out" personally and about his business practices.

172.    According to public records, at the time of this particular stop, Plaintiff's employer, Spencer Bros. LLC, was the only tank removal company in the Lakes Region that had recently been investigated by the FMCSA. Such a veiled statement by Trooper Holston was not only defamatory towards the Plaintiff, but it was an attempt to incite discourse, cause embarrassment, and tarnish the reputation of the Plaintiff and the Plaintiff's employer.

a.  In 2018 the Plaintiff was subject to the following traffic stops by the NHSP, as follows:February 14, 2018: Trooper Kopp in Berlin, New Hampshire. No citation was issued.

b.  August 23, 2018: Trooper Raymond in Alton, New Hampshire. Trooper Raymond approached the Plaintiff in a busy McDonald's parking lot in Alton. The Plaintiff was asked by Trooper Raymond if he could view the door sticker on the Plaintiff's company truck. The Plaintiff complied with the request. The Plaintiff and the Plaintiff's employer were embarrassed because the Plaintiff was wearing the company uniform and operating

a company vehicle while being scrutinized in public by NH State Police Trooper Raymond. No citation was issued.

c.  October 2018: Trooper Waldvogel in Hooksett, New Hampshire. Trooper Waldvogel waved Plaintiff to the side of the road under the pretense that his truck was not lettered, even though the GVW classification of the truck in question does not require the vehicle to be lettered. Trooper Waldvogel could not have possibly observed the sides of the vehicle that Plaintiff was operating, which would have readily determined whether the truck was lettered. Trooper Waldvogel was stationary and directly facing the front grill of the truck at the time he waived Plaintiff to the side of the road of the truck weigh station in Hooksett, New Hampshire. No citation was issued.

d.  December 11, 2018: Trooper Burnson in Bedford, New Hampshire. No citation was issued.

e.  One hour later, on December 11, 2018: Trooper Magoon in Canterbury, New Hampshire informed the Plaintiff that he "was in his office" pointing to the highway as he berated and threatened the Plaintiff with arrest. No citation was issued to the Plaintiff.

173.    Initially, the State Police denied any records of such stops, but eventually had to declare the allegations concerning stops related to Kopp, Waldvogel, and Raymond as "unfounded." The remaining Troopers motives were never revealed and were never accounted for by the NHSP.[36]

174.    The FMCSA, through their agent Attorney Cynthia Campise, continued efforts to litigate the nominal fine against the Plaintiff even in the face of the now clear fact that no evidence existed to continue the investigation.

---

[36] (J. Bishop, Unfounded Letter - Kopp, Waldvogel, and Raymond, 2019)

175.    With in-person depositions scheduled for mid to late March of 2020 the COVID pandemic delayed the matter substantially. Attorney Campise was not willing or able to travel during COVID.

176.    The Parties agreed consistently to push out the deposition dates, until September of 2021.

177.    With in-person Depositions on the calendar for Trooper Doran and investigators Woods and Grey finally after years of waiting for the opportunity to face these individuals and put them to their proof, Defendant FMCSA, through their agent Attorney Campise, voluntarily dismissed the matter.

178.    This dismissal after years of litigation was a surprise to the Plaintiffs who had spent countless hours and extensive legal fees defending themselves from these frivolous allegations.

179.    Given the history of this matter it is clear from the dismissal that this matter had always been intended to be retaliatory.

180.    The Defendants dismissed this claim at the very moment where they would have had to answer questions about the lack of evidence to support their claims against the Plaintiffs.

181.    The actions of the Defendants in their individual and representative capacities, under the color of law, as described herein, and as will be proven at trial, are outrageous and discriminating against the Plaintiff and were designed solely to harass and cause additional and greater injuries to the Plaintiff.

## COUNT I:
## MALICIOUS PROSECUTION

182.    Plaintiff repeats and re-alleges each and every allegation contained herein as if

fully stated under this count.

183.    As discussed at length above the Defendants progressed a long campaign of harassment and litigation against the Plaintiffs despite the fact that they had no evidence of any wrongdoing.

184.    At the end of this half decade of proceedings the FMCSA and the Defendants named in their official capacities dismissed the case right before Doran, Woods and Gray were to be deposed.

185.    The Plaintiffs therefore have not been convicted of any wrongdoing.

186.    "It is well settled that in the context of a malicious prosecution claim, probable cause is defined as 'such a state of facts in the mind of the prosecutor as would lead a [person] of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty'" Paul v. Sherburne, 903 A.2d 1011, 1014 (N.H. 2006) citing. Stock v. Byers, 120 N.H 844, 846 (1980) (citation omitted).

187.    Here it has been clear from moment one of this matter that the Defendants had no evidence on which they could convict the Plaintiffs of any of the violations they have charged him with.

188.    The dismissal of the matter at the very moment that the alleged witnesses were to be deposed shows, with zero doubt that this entire proceeding was based upon a lack of probable cause.

189.    The Plaintiffs made this fact abundantly and consistently clear throughout this matter.

190.    The Plaintiffs presented ample evidence that this decision should have been made at the outset of the case, and as a reaction to that argument received further lies and

harassment.

191.     The dismissal of the action in the FMCSA was intended to cover up the obvious, that this matter lacked merit from moment one. The extensive timeline above presents the full story for how this claim was wrongfully made, how the Defendants retaliated and covered up the lies, and finally that they dismissed this action the moment they would have had to answer for it.

192.     The Plaintiffs suffered extensive damage because of these actions within the jurisdictional limits of this court.

193.     Each of the several Defendants played a part in the prosecution of the plaintiff and as delineated above each Defendant knew that what they were achieving was the progression of their lies to prosecute the Plaintiffs they knew he did not do.

WHEREFORE, The Plaintiffs respectfully requests that this Honorable Court:

A. Order damages within the jurisdictional limits of this court.

B. Grant any further relief as may be fair and just.

Dated: November 16, 2022

Respectfully Submitted,
Plaintiffs
By and through their counsel

/s/ Keith A. Mathews_____
Keith A. Mathews, Esq.
NH Bar No. 20997
1000 Elm Street, Suite 800
Manchester, NH 03102
(603) 622-8100
(888) 912-1497 fax
Keith@awplegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: November 16, 2022                                    /s/ Keith A. Mathews