# EXHIBIT B

## UNITED STATES DEPARTMENT OF TRANSPORTATION

| | US DOT # 2901481 | Legal: SPENCER BROS LLC Operating (DBA): | | |
|---|---|---|---|---|

**MC/MX #:**  Federal Tax ID: 45-5300272 (EIN)

**Review Type:** Compliance Review (CR)

**Scope:**  Principal Office    Location of Review/Audit: Company facility in the U. S.    Territory:

| Operation Types | Interstate | Intrastate | |
|---|---|---|---|
| Carrier: | HM | HM | **Business:** Corporation |
| Shipper: | HM | HM | **Gross Revenue:** $247,425.00    for year ending: 12/31/2015 |
| Cargo Tank: | N/A | | |

**Company Physical Address:**

116 HOUNSELL AVE UNIT 2
LACONIA, NH 03246-1377

**Contact Name:**    William Spencer
**Phone numbers:** (1) 603-556-9300    (2)    Fax:
**E-Mail Address:**    spencerbrosnh@gmail.com

**Company Mailing Address:**

PO BOX 7623
LACONIA, NH 03247-7263

**Carrier Classification**

Private Property

**Cargo Classification**

Liquids / Gases in Cargo Tanks

**Hazardous Materials**

| 3 Combustible liquid | Carr./Ship. | Bulk | 9 Miscellaneous HM | Carried | Non-Bulk |
|---|---|---|---|---|---|

**Equipment**

| | Owned | Term Leased | Trip Leased | | Owned | Term Leased | Trip Leased |
|---|---|---|---|---|---|---|---|
| Truck | 3 | 0 | 0 | Trailer | 2 | 0 | 0 |

Power units used in the U.S.: 3
Percentage of time used in the U.S.: 100

Does carrier transport placardable quantities of HM?    Yes
Is an HM Permit required?    N/A

**Driver Information**

| | Inter | Intra | Average trip leased drivers/month: 0 |
|---|---|---|---|
| < 100 Miles: | 1 | | Total Drivers: 1 |
| >= 100 Miles: | | | CDL Drivers: 1 |

State Defs.' Ex. B 000063



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
|---|---|

| Part A |
|---|

Questions about this report or the Federal Motor Carrier Safety or Hazardous Materials regulations may be addressed to the Federal Motor Carrier Safety Administration at:

JC Cleveland Federal Building 53 Pleasant Street, Suite 3300
Concord, NH 03301
Phone: (603)228-3112    Fax:(603)223-0390

**This report will be used to assess your safety compliance.**

**Person(s) interviewed**
Name: William Spencer        Title: Operations Manager
Name:                        Title:

8/2/2016 3:37:12 PM

Page 2 of 2


O9ITA9LS1AZAA

Capri 6.8.9.3

FMCSA-2016-0294

13 of 49

Page 13 of 49

State Defs.' Ex. B 000064



| **SPENCER BROS LLC**<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
| --- | --- |

## Part B Violations

| 1<br>FEDERAL<br>ACUTE | Primary: 382.115(a) | Discovered<br>1 | Checked<br>1 | Drivers/Vehicles<br>In Violation<br>1 | Checked<br>1 |
| --- | --- | --- | --- | --- | --- |

**Description**
Failing to implement an alcohol and/or controlled substances testing program on the date the employer begins commercial motor vehicle operations.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 6/17/16.
CARRIER HAD NOT IMPLEMENTED A D/A TESTING PROGRAM UNTIL 6/20/2016.

| 2<br>FEDERAL<br>ACUTE | Primary: 383.37(a) | Discovered<br>1 | Checked<br>1 | Drivers/Vehicles<br>In Violation<br>1 | Checked<br>1 |
| --- | --- | --- | --- | --- | --- |

**Description**
Allowing, requiring, permitting, or authorizing a driver to operate a CMV during any period in which the driver does not have a current CLP or CDL or does not have a CLP or CDL with the proper class or endorsements. An employer may not use a driver to operate a CMV who violates any restriction on the driver's CLP or CDL.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
DRIVER WILLIAM SPENCER DOES NOT HAVE HM ENDORSEMENT.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.

| 3<br>FEDERAL<br>CRITICAL | Primary: 177.800(c)<br>Secondary: 172.704(a)(1) | Discovered<br>2 | Checked<br>2 | Drivers/Vehicles<br>In Violation<br>2 | Checked<br>2 |
| --- | --- | --- | --- | --- | --- |

**Description**
Failing to instruct a category of employees in the hazardous material regulations by failing to provide General Awareness Training.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
CARRIER FAILED TO PROVIDE HM TRAINING TO ANY AND ALL EMPLOYEES/DRIVERS/LABORERS.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.

| 4<br>FEDERAL<br>CRITICAL | Primary: 177.817(a) | Discovered<br>2 | Checked<br>2 | Drivers/Vehicles<br>In Violation<br>1 | Checked<br>1 |
| --- | --- | --- | --- | --- | --- |

**Description**
Transporting a shipment of hazardous materials not accompanied by a properly prepared shipping paper.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.
CARRIER FAILED TO CREATE PROPER SHIPPING PAPERS.

| 5<br>FEDERAL<br>CRITICAL | Primary: 395.8(a) | Discovered<br>1 | Checked<br>1 | Drivers/Vehicles<br>In Violation<br>1 | Checked<br>1 |
| --- | --- | --- | --- | --- | --- |

**Description**
Failing to require driver to make a record of duty status.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.


State Defs.' Ex. B 000065



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

### Part B Violations

| 6 STATE CRITICAL | Primary: 395.8(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|
| | CFR Equivalent: 395.8(a) | | | | |

**Description**
Failing to require driver to make a record of duty status.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 3/15/16.
FAILED TO COMPLETE A TIME RECORD THAT MEETS PART 395.1 OR 395.8.

| 7 FEDERAL | Primary: 107.608(b) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation | Checked |
|---|---|---|---|---|---|

**Description**
Transporting a hazardous material without having registered with the Department, under Subpart G of Part 107.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.
TRANSPORTING PLACARDABLE HM AND NOT REGISTERED WITH PHMSA.

| 8 FEDERAL | Primary: 172.600(c)(1) | Discovered 2 | Checked 2 | Drivers/Vehicles In Violation | Checked |
|---|---|---|---|---|---|

**Description**
Failing to provide emergency response information.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.
CARRIER DOES NOT HAVE ANY EMERGENCY RESPONSE INFORMATION.

| 9 FEDERAL | Primary: 172.704(c)(2) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation | Checked |
|---|---|---|---|---|---|

**Description**
Failing to retrain hazardous material employees every three years.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
DATE OF HIRE: NH SECRETARY OF STATE SHOWS REGISTRATION OF 2012.
DRIVER WILLIAM SPENCER SAYS HE HAD TRAINING 10 YEARS AGO.
DRIVER, LOADS AND UNLOADS HM.
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.

| 10 FEDERAL | Primary: 177.823(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|

**Description**
Moving a transport vehicle containing hazardous material that is not properly marked or placarded.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
NO SHIPPING PAPERS
COMBUSTIBLE LIQUID, NA 1993, PG III, 275 GALLON OIL TANK.
CLASS 3 PLACARD REQUIRED

---



State Defs.' Ex. B 000066

| SPENCER BROS LLC U.S. DOT #: 2901481 | Review Date: 07/27/2016 |
|---|---|

## Part B Violations

| 11 FEDERAL | Primary: 391.51(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|

**Description**
Failing to maintain driver qualification file on each driver employed.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.

| 12 FEDERAL | Primary: 392.9b(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|

**Description**
Operating a CMV in interstate commerce without USDOT Registration.

**Example**
DRIVER WILLIAM SPENCER TRIP DATE 4/29/16.
CARRIER FAILED TO OBTAIN US DOT NUMBER BEFORE INTERSTATE OPERATION.

| 13 FEDERAL | Primary: 396.3(b)(1) | Discovered 5 | Checked 5 | Drivers/Vehicles In Violation 5 | Checked 5 |
|---|---|---|---|---|---|

**Description**
Failing to keep a maintenance record which identifies the vehicle, including make, serial number, year, and tire size.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16.
VEHICLE ID RECORDS CREATED BY PEASLEY CONSULTANTS ON 6/17/16.

| 14 STATE | Primary: 396.3(b)(3) CFR Equivalent: 396.3(b)(3) | Discovered 1 | Checked 5 | Drivers/Vehicles In Violation 1 | Checked 5 |
|---|---|---|---|---|---|

**Description**
Failing to keep a record of inspection, repairs and maintenance indicating their date and nature.

**Example**
DRIVER WILLIAM SPENCER TRIP DATE 6/17/16
MISSING WORK ORDERS FOR REPAIRS MADE.

| 15 FEDERAL | Primary: 396.11(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|

**Description**
Failing to require driver to prepare driver vehicle inspection report.

**Example**
DRIVER WILLIAM SPENCER, TRIP DATE 4/29/16, NH PLATE OILTNK1.
NO DVIR PREPARED AFTER ROADSIDE STOP INDICATED MECHANICAL VIOLATIONS.

8/24/2016 2:42:37 PM
Page 3 of 5

O9ITA9US1AZAA
Capri 6.8.10.2

FMCSA-2016-0294

16 of 49

Page 16 of 49

State Defs.' Ex. B 000067



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | | | | Review Date:<br>07/27/2016 |
|---|---|---|---|---|

**Part B Violations**

| 16<br>FEDERAL | Primary: 5121(c)<br>Secondary: 521(b)(2)(E) | Discovered<br>1 | Checked<br>1 | Drivers/Vehicles<br>In Violation  Checked<br>1          1 |
|---|---|---|---|---|

**Description**
Failing to allow, upon demand, a designated employee of FMCSA to promptly inspect and copy and/or inspect and examine equipment, lands, buildings, or other property in accordance with 49 USC section 5121(c).
DATE OF FIRST MEETING 6/13/16, REQUEST TO SEE DOCUMENTS THAT WERE ON THE PROPERTY AT THE TIME.
DATE CARRIER REFUSED ACCESS TO RECORDS ON THE PROPERTY 6/13/16.
CARRIER REPRESENTATIVE PRESENT: WILLIAM SPENCER (OPERATIONS MANAGER)

| Safety Fitness Rating Information: | | | |
|---|---|---|---|
| Total Miles Operated | 7,899 | OOS Vehicle (CR): 0 | |
| Recordable Accidents | 0 | Number of Vehicle Inspected (CR): 2 | |
| Recordable Accidents/Million Miles | 0.00 | OOS Vehicle (MCMIS): 0 | |
| | | Number of Vehicles Inspected (MCMIS): 1 | |

Your proposed safety rating is :

## UNSATISFACTORY

| Rating Factors | | Acute | Critical |
|---|---|---|---|
| Factor 1: | S | 0 | 0 |
| Factor 2: | U | 2 | 0 |
| Factor 3: | U | 0 | 2 |
| Factor 4: | S | 0 | 0 |
| Factor 5: | U | 0 | 2 |
| Factor 6: | S | - | * |

Effective date: The unsatisfactory rating will take effect 45 days after the date of a forthcoming official notice from the Federal Motor Carrier Safety Administration headquarters office in Washington, D.C.

PROHIBITION: Under 49 USC sections 13905(f)(1)(B) and 31144, and 49 CFR section 385.13, a motor carrier that receives a final safety rating of unsatisfactory is prohibited from operating a commercial motor vehicle in interstate and intrastate commerce and, if applicable, shall have its registration revoked unless and until such time the FMCSA determines the motor carrier is fit and the motor carrier has reinstated its registration.

49 U.S.C. 31144 provides that the prohibition takes effect unless the motor carrier, within 45 days of the date of the forthcoming official notice, takes the necessary steps to improve the rating to conditional or satisfactory.

Unless the motor carrier receives an improved rating within 45 days from the date of the forthcoming official notice from Washington, D.C. the motor carrier will be subject to the prohibition in 49 CFR 385.13.

Corrective actions must be taken for the violations (deficiencies) listed on Part B of this review. Title 49 CFR Sections 385.15 and 385.17 provide for administrative review and a change to a safety rating based on corrective actions, respectively. A request for a change to a safety rating under section 385.17 may be made at any time. A motor carrier may request, in writing, a change in the rating by providing evidence of corrective actions to the Field Administrator for the FMCSA Service Center in which the carrier maintains its principal place of business. (See 49 CFR 385.17 for additional details). A request for administrative review under section 385.15 must be made within 90 days of the date of the proposed safety rating issued under section 385.11(c) or a final safety rating issued under section 385.11(b), or within 90 days after denial of a request for a change in rating under section 385.17.

Administrative Review: A motor carrier of hazardous materials or passengers may appeal its proposed safety rating in a petition filed pursuant to 49 CFR section 385.15 if it believes that the rating is in error and there are factual and procedural issues in dispute. Such appeals must be made within 90 days of the date of the proposed safety rating, but should be made within 15 days of the date of the safety rating to allow the FMCSA to issue a written decision before the prohibitions in 49 CFR 385.13 take effect. Appeals filed pursuant to section 385.15 should be addressed to: Chief Safety Officer, Federal Motor Carrier Safety Administration, 1200 New Jersey Ave., S.E., Washington, DC 20590. The motor carrier will receive a written decision on the petition within 30 days from receipt of the petition by the Chief Safety Officer. (See 49 CFR 385.15 for additional details.)


O9ITA9US1AZAA

Capri 6.8.10.2

FMCSA-2016-0294                                                                                    17 of 49

State Defs.' Ex. B 000068



| SPENCER BROS LLC | Review Date: |
| U.S. DOT #: 2901481 | 07/27/2016 |

### Part B Violations

(Note: Neither a petition to contest the rating nor a request for a change in the rating will delay the effective date of the rating, if unchanged.)

If this was a focused investigation, which will be noted in the Review Type on the first page of this report (Part A), some factors shown above may be marked "SATISFACTORY" even if they were not reviewed. A focused investigation will not result in a SATISFACTORY safety rating because all standards and factors specified in 40 CFR 383.5 and 385.7 were not examined in full, even though it may appear that they were under the rating factors in Part B of this document. It may, however, result in a less than SATISFACTORY rating if sufficient violations are discovered in the parts and factors examined to result in a CONDITIONAL or UNSATISFACTORY rating, or a non-ratable review.

If you receive a conditional or unsatisfactory rating, you may request an administrative review under 49 CFR 385.15 or a safety rating upgrade based on corrective action under 49 CFR 385.17. However, a successful request may only result in a non-ratable status, upgrade to a conditional safety rating, or reinstatement of your most recent safety rating. You will not receive a new satisfactory safety rating as a result of your request(s) under 49 CFR 385.15 and/or 49 CFR 385.17.


State Defs.' Ex. B 000069



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

### Part B Requirements and/or Recommendations

1. Conduct periodic internal reviews of your maintenance, hazardous materials handling, driver qualification, hours of service control, accident reporting, training, and other safety systems to ensure continued compliance.

2. Require all drivers to prepare complete and accurate records of duty status for each day, and to submit them within 13 days. Maintain all duty status records on file, with all supporting documents, for at least 6 months.

3. Toll receipts and other on-the-road expense receipts, invoices, bills of lading, dispatch records, and other "supporting document" must be kept on file for six (6) months. This requirement also applies to records generated by the use of owner-operators. You may keep legible photocopies in lieu of originals.

4. Establish a systematic maintenance records program for all vehicles. Maintain a complete file for each subject vehicle, recording all repair, maintenance and inspection operations performed.

5. Obtain and become familiar with the United States Federal Hazardous Materials Regulations, Title 49 CFR, Parts 100-199.

6. A complete Educational and Technical Assistance package entitled " A MOTOR CARRIER'S GUIDE TO IMPROVING HIGHWAY SAFETY" is available free on the FMCSA website to assist you in complying with the safety regulations. It contains many forms and documents useful for improving the safety of your operations. Check: www.fmcsa.dot.gov/factsfigs/eta/index.html.

7. HOS COMPLIANCE BASIC PROCESS BREAKDOWN: Roles and Responsibilities

DESCRIPTION OF PROCESS BREAKDOWN: During the review of HOS/ time records, William Spencer indicated that he was the only driver and produced copies of an appointment book that he claims to use as time records. These records listed his name or initial and total hours only. William Spencer as Operations Manager and driver has the role and responsibility of ensuring compliance. Mr. Spencer indicated that he thought he was doing it correctly. Mr. Spencer has previous knowledge in this area because he was the LLC Member of Pro Se Excavations LLC (dot 1744405) (inactive) which had a safety audit in 2009 where Mr. Spencer, according to the SA, had time records that met the HOS exemption.

BASIC SPECIFIC RECOMMENDED REMEDIES: Mr. Spencer had hired Peasley Safety Consultants to assist him with compliance. Mr. Spencer acknowledged that Wayne Peasley had gone over the HOS regulations with him and he will be in compliance in the future.

Implement Safety Improvement Practices: The following are recommended practices related to Roles and Responsibilities.
- Define and document roles and responsibilities of managers and supervisors for monitoring compliance with Hours-of-Service (HOS) policies.
- Ensure that managers are responsible for reviewing Records of Duty Status (RODS) for accuracy and for disciplining those who falsify their logs.
- Assign responsibility for making sure that all Records of Duty Status (RODS) are collected and stored for six months.
- Prior to accepting shipments, ensure that dispatchers are responsible for mapping out routes, asking drivers how many hours they have driven recently, and verifying that the route can be completed without breaking Hours-of-Service (HOS) regulations.
- Ensure that drivers are responsible for informing the carrier when they are sick, keeping accurate Records of Duty Status (RODS), and planning their route so that it can be completed efficiently within Hours-of-Service (HOS) rules.
- Define and document roles and responsibilities of drivers and dispatchers as they pertain to Hours-of-Service (HOS) policies and procedures.

HAZMAT Carrier Only:


State Defs.' Ex. B 000070



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

## Part B Requirements and/or Recommendations

- Ensure that managers and dispatchers ascertain that drivers who may already be stressed for time due to non-driving HAZMAT responsibilities are not overburdened.

Seek Out Resources.
- You are encouraged to review your company's record at the following website: http://ai.fmcsa.dot.gov/SMS.
You will need to use your PIN Number that has been provided by the FMCSA.
- Contact industry associations to get resources and ideas on safety improvement practices from other carriers in the industry.

8. VEHICLE MAINTENANCE BASIC - INSPECTION-REPAIR-MAINTENANCE PROCESS BREAKDOWN: Training and Communication

DESCRIPTION OF PROCESS BREAKDOWN: During the review William Spencer (Operations Manager) produced "Vehicle Service Due Status Reports" that were provided by Wayne Peasley on 6/17/16 in an attempt to get the carrier into compliance. Mr. Spencer was able to produce parts receipts for parts purchased to repair the fleet however, he could not produce work/repair orders indicating when the repair was made. Mr. Spencer also could not produce a DVIR for 4/29/16 the date of a roadside inspection (#NH1039002337) where mechanical violations were discovered. Mr. Spencer has previous knowledge in this area because he was the LLC Member of Pro Se Excavations LLC (dot 1744405) (inactive) which had a safety audit in 2009. The SA showed that Mr. Spencer produced a Maintenance file.

BASIC SPECIFIC RECOMMENDED REMEDIES: Mr. Spencer was advised of the regulations. In conjunction with Peasley Consultants to make the required changes for compliance. Mr. Spencer said he would make the changes.

Implement Safety Improvement Practices: The following are recommended practices related to Communication and Training.
- Convey expectations to all applicable staff for adhering to vehicle inspection, repairing, and maintenance regulations and company policies and procedures, and for executing responsibilities by providing new-hire and refresher training, and establish communication channels such as newsletters and/or meetings focused on conflicts between vehicle availability and repair requirements.
- Ensure that all employees understand and accept their responsibility for timely communication of safety issues related to fleet inspection, repair, and maintenance to the appropriate individuals.
- Ensure that managers and supervisors articulate their commitment to and establish communication with employees concerning vehicle inspection, repair, and maintenance.
- Communicate the carrier's Vehicle Maintenance percentile to all staff and explain to them individually what they can do to help the carrier improve the percentile.
- Ensure that mechanics and technicians communicate with the vehicle and equipment manufacturers and receive regular updated bulletins and recommendations.
- Ensure that carriers with non-English-speaking employees who need to communicate with English-speaking employees and to understand English-language literature, such as the manufacturer's guide, have ways to deal successfully with language barriers.
- Ensure that all drivers, dispatchers, managers, mechanics, and technicians receive training, including methods and tools, and appropriate certifications to fulfill their responsibilities and documentation requirements regarding vehicle inspection, repair, and maintenance, as required by regulations and company policies.
- Implement and provide training for a fleet maintenance software system that can be updated according to current industry and regulatory standards, manufacturer's recommendations, and the carrier's experience.
- Train mechanics to be able to differentiate between safety-related defects and other defects - for example, by recognizing that defective wheel ends can lead to wheel separation.
- Ensure that drivers are trained in vehicle Out-of-Service (OOS) rules, their responsibilities in adhering to them, and the carrier's procedures for reporting OOS violations and communicating appropriately with other personnel.
- Train all staff who are required to monitor and track vehicle maintenance on the appropriate company policies, including those related to discipline and incentives.
- Provide hiring officials with guidance on how best to attract, screen, and qualify applicants who are most likely to adhere to vehicle inspection, repairing, and maintenance regulations and company policies and procedures.
- Reinforce training to drivers, mechanics and other employees about vehicle maintenance policies, procedures,


State Defs.' Ex. B 000071



| | |
|---|---|
| **SPENCER BROS LLC**<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
| **Part B Requirements and/or Recommendations** | |

and responsibilities, using job aids, post-training testing, and/or refresher training. Encourage informal feedback among drivers and mechanics so that they can help each other to improve.

Seek Out Resources:
• You are encouraged to review your company's record at the following website: http://ai.fmcsa.dot.gov/SMS. You will need to use your PIN Number that has been provided by the FMCSA.
• Contact industry associations to get resources and ideas on safety improvement practices from other carriers in the industry.

9. CONTROLLED SUBSTANCES AND ALCOHOL BASIC PROCESS BREAKDOWN: Roles and Responsibilities

DESCRIPTION OF PROCESS BREAKDOWN: During the review William Spencer (Operations Manager) indicated that he was not in a D/A testing program until Peasley Consultants informed him of the requirement. Mr. Spencer enrolled with Lakes Region Occupational Health and took a pre-employment test on 6/16/16. William Spencer as Operations Manager and driver of the vehicles requiring at CDL has the role and responsibility of ensuring compliance Mr. Spencer has previous knowledge in this area because he was the LLC Member of Pro Se Excavations LLC (dot 1744405) (inactive) which had a safety audit in 2009 where Mr. Spencer was not enrolled in a D/A testing program and operating a CMV with a gvwr of 33,000 pounds.

BASIC SPECIFIC RECOMMENDED REMEDIES: Mr. Spencer was able to produce D/A testing information including a Policy and enrollment paperwork with LRGH that was signed on 6/20/16. He was assisted by Peasley Consulting in this effort.

Implement Safety Improvement Practices: The following are recommended practices related to Roles and Responsibilities.
• Ensure that managers are responsible for ascertaining that employees receive training concerning controlled substances and alcohol in accordance with State or Federal regulations and company policy.
• Ensure that managers are responsible for telling employees of a failed test and its implications.
• Regardless of carrier membership in a consortium, ensure that the carrier defines and documents the role and responsibilities of the designated employer representative (DER) in monitoring test procedures and checking results.
• If the carrier elects to join a consortium, ensure that the respective roles and responsibilities of the carrier and the consortium for controlled-substance and alcohol testing and reporting are defined and documented.

Seek Out Resources:
• You are encouraged to review your company's record at the following website: http://ai.fmcsa.dot.gov/SMS. You will need to use your PIN Number that has been provided by the FMCSA.
• Contact industry associations to get resources and ideas on safety improvement practices from other carriers in the industry.

10. DRIVER FITNESS BASIC PROCESS BREAKDOWN: Roles and Responsibilities

DESCRIPTION OF PROCESS BREAKDOWN: During the review Mr. Spencer (Operations Manager) produced a DQ file that was dated 6/17/16. This file was prepared by Peasley Consultants. Mr. Spencer admitted during an interview on 6/27/16 that he did not have a DQ file prior to 6/17/16. William Spencer as Operations Manager and driver has the role and responsibility of ensuring compliance. Mr. Spencer has previous knowledge in this area because he was the LLC Member of Pro Se Excavations LLC (dot 1744405) (inactive) which had a safety audit in 2009 where Mr. Spencer was unable to produce a DQ file during the audit.

BASIC SPECIFIC RECOMMENDED REMEDIES: Mr. Spencer was advised that there are annual updates and that the file needs to be updated at least annually.

Implement Safety Improvement Practices: The following are recommended practices related to Roles and Responsibilities.
• Define and document the role of managers and supervisors for implementing driver-fitness policies and for



**State Defs.' Ex. B 000072**



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
|---|---|
| Part B Requirements and/or Recommendations | |

monitoring compliance with them. This should include regular evaluation of the carrier's driver-wellness program.
· Define and document roles and responsibilities of managers and supervisors in providing training and maintaining qualifications for all employees according to driver-fitness regulations and company policies and procedures.
· Ensure that operations managers and dispatchers are responsible for having the proper amount of fit drivers by considering short-term changes, for example, with regard to vacations, variations in sales, and additional driver duties, and long-term changes, for example, with regard to permanent reassignment and termination of employees.
· Ensure that dispatchers and operation managers are responsible for ascertaining that drivers are qualified before authorizing runs.
· Define and document roles and responsibilities of drivers, dispatchers, and other personnel according to driver fitness regulations and company policies and procedures.

Seek Out Resources:
· You are encouraged to review your company's record at the following website: http://ai.fmcsa.dot.gov/SMS. You will need to use your PIN Number that has been provided by the FMCSA.
· Contact industry associations to get resources and ideas on safety improvement practices from other carriers in the industry.

11. HM COMPLIANCE BASIC PROCESS BREAKDOWN: Training and Communication

DESCRIPTION OF SAFETY MANAGEMENT AREA BREAKDOWN: During the review it was discovered that the carrier was transporting 275 gallon home heating oil tanks in his vehicle without evidence of the tanks being cleaned and purged. William Spencer the carrier Operations Manager and only driver did not meet any of the HM rules or regulations, for training, license endorsements, placarding, shipping papers and PHMSA registration. Mr. Spencer said he was not aware of the HM issues. He said that he did not think he was doing anything wrong.

BASIC SPECIFIC RECOMMENDED REMEDIES: Mr. Spencer hired Peasley Safety Consultants to assist him with compliance including HM compliance. According to Mr. Spencer, he will no longer transport complete and in tact tanks. He will cut them and clean them prior to transportation.

Implement Safety Improvement Practices: The following are recommended practices related to Communication and Training.
· Communicate expectations for adhering to all HAZMAT-handling regulations and company policies to drivers, dispatchers, managers, and other designated personnel. Provide new- hire and refresher awareness training for meeting those expectations with regard to testing and inspection of cargo tanks; loading and unloading product handling, securement, marking, labeling, placarding, and reporting; and transportation registration, documentation (e.g. shipping papers), recordkeeping, security, and emergency response.
· Communicate the carrier's HM Compliance BASIC percentile to all staff and explain to them individually what they can do to help improve compliance.
· Ensure that dispatchers know how to confirm regulatory requirements with shippers and to verify authorized packages
· Ensure that company officials and safety managers who ship explosives make drivers and dispatchers aware that operating or stopping in a restricted location is dangerous and illegal according to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Federal Motor Carrier Safety Administration (FMCSA).
· Develop an apprenticeship program to provide individualized training and certification for cargo-tank testing and inspection to new hires and transfers if there is a shortage of qualified inspectors.
· Ensure that all HAZMAT employees receive training on the development and implementation of a security plan.

Seek Out Resources:
· You are encouraged to review your company's record at the following website: http://ai.fmcsa.dot.gov/SMS. You will need to use your PIN Number that has been provided by the FMCSA.
· Contact industry associations to get resources and ideas on safety improvement practices from other carriers in the industry.


O9ITA9LS1AZAA

State Defs.' Ex. B 000073



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
|---|---|

### Part B Requirements and/or Recommendations

12. For all Investigations.

Understand Why Compliance Saves Time and Money: Compliance with FMCSRs will not only save lives, but also saves your business time and money. Tracking how much your business spends on non-compliance activities can help you understand the many benefits of compliance to your business and why safety is good business.

Apply Adequate Resources: Apply adequate resources to properly implement safety management practices. Consider reallocating responsibilities, additional staffing, contracting, or investing in technology to aid in this responsibility.

The Pre-Employment Screening Program (PSP) is a screening tool that assists motor carriers in investigating crash history and roadside safety performance of prospective drivers. The PSP allows motor carriers to purchase 5 years of crash data and 3 years of roadside inspection data from the Federal Motor Carrier Safety Administration's (FMCSA) Motor Carrier Management Information System (MCMIS). Records are available 24 hours a day via Web request. Motor carriers should visit the following website for more information:
http://www.psp.fmcsa.dot.gov/Pages/default.aspx

NOTICE: 49 CFR Part 391.23 requires prospective employers to, at a minimum, investigate a driver's employment information, crash record, and alcohol and controlled substances history from all employers the driver worked for within the previous 3 years.

Document and Follow Through on Action Plans: Document and follow through on action plans to ensure the actions you are taking are creating improvement in safety management and compliance.

NOTICE: A pattern and/or repeated violations of the same or related acute or critical regulations (violations of the same Part in Title 49, Code of Federal Regulations) will cause the maximum penalties allowed by law to be assessed under Section 222 of the Motor Carrier Safety Improvement Act of 1999 (MCSIA). A pattern of violations means two or more violations of acute and/or critical regulations in three or more Parts of Title 49, Code of Federal Regulations discovered during any eligible investigation. Repeated violations means violation(s) of an acute regulation of the same Part of Title 49, Code of Federal Regulations discovered in an investigation after one or more closed enforcement actions within a six year period and/or violation(s) of a critical regulation in the same Part of Title 49, Code of Federal Regulations discovered in an investigation after two or more closed enforcement actions within a six year period.

All motor carriers and truck drivers are needed to fight against terrorism and hijacking. You could be a target. Protect yourself, your trucks, your cargo, and your facilities. Discuss with your employees/drivers the "Security Measures for Truck Drivers and Companies" which were provided and reviewed with motor carrier official.

For all Investigations resulting in a Notice of Claim:

PLEASE NOTE: The violations discovered during this compliance review may affect the civil penalty proposed in any subsequent Notice of Claim. In addition, your history of prior violations of the Federal Motor Carrier Safety Regulations, Federal Hazardous Material Regulations or the Federal Motor Carrier Commercial Regulations may also affect the civil penalty proposed in any subsequent Notice of Claim. The receipt of this report acknowledges your understanding that the violations discovered by the FMCSA during this review may be used to calculate any civil penalty proposed as a result of this review.

Attached to this report is Table 1, which identifies all the documented violations which were discovered during the course of this review.

For all Investigations resulting in serious violations:

Serious violations were recorded on this investigation report. These violations will impact your safety record. Furthermore, these violations may result in a follow-up investigation at a later date unless adequate evidence of corrective action is received in our office:



State Defs.' Ex. B 000074



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

### Part B Requirements and/or Recommendations

Steven M. Piwowarski  Division Administrator
FMCSA, New Hampshire Division
JC Cleveland Federal Building
53 Pleasant Street, Suite 3300
Concord, NH 03301

For all Investigations resulting in a proposed conditional or unsatisfactory rating.
385.15
If you believe the proposed rating is in error and there are factual and procedural issues in dispute, Part 385.15 (copy provided) outlines procedures for petitioning the Federal Motor Carrier Safety Administration for an administrative review of these findings. Your petition should be addressed to:

Mr. Jack Van Steenburg, Chief Safety Officer
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue, S.E.
Washington, DC 20590.

385.17
In addition, a request for a revised rating based on corrective actions may be made at any time. Part 385.17 (copy provided) outlines the procedures for such a request. The request must be made in writing, must describe the corrective action taken and must include other documentation that may be relied upon as a basis for the requested change. Address your written request to:

Taft Kelly, Field Administrator
FMCSA, Eastern Service Center
802 Cromwell Rd.
Glen Burnie, MD 21061

Ensure that a CC copy of the letter is mailed to:

Steven M. Piwowarski, Division Administrator
FMCSA, New Hampshire Division
JC Cleveland Federal Building
53 Pleasant Street, Suite 3300
Concord NH 03301

For all Investigations resulting in a proposed unsatisfactory rating:
Passenger & Placardable HM Carriers:  This review will result in a Proposed Safety Rating. The findings indicate you are currently operating at an unsatisfactory level of safety compliance. A written notice of proposed unsatisfactory rating will be sent to you by the FMCSA via U.S. Mail. If you fail to obtain an improved rating within 45 days of the date that notice is sent, the unsatisfactory rating will become final and you must cease interstate operations.

Information on your compliance status, roadside inspections, regulatory changes, accident counter measures and hazardous material counter measures is available on the Internet at the Federal Motor Carrier Safety Administration's web site at http://www.fmcsa.dot.gov/ and http://www.safer.fmcsa.dot.gov/.

8/2/2016 3:37 13 PM

Page 6 of 6


O9ITA9LS1AZAA

Capri 5.8.9.3

FMCSA-2016-0294

24 of 49

Page 24 of 49

State Defs.' Ex. B 000075



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

## TABLE OF VIOLATIONS

| Section # | Identifying Information | Violation Date |
|---|---|---|
| 172.600(c)(1) | DRIVER WILLIAM SPENCER | 3/15/2016 |
| 172.600(c)(1) | DRIVER WILLIAM SPENCER | 4/29/2016 |
| 177.800(c) | LABORER MIKE CERIELLO | 3/15/2016 |
| 177.800(c) | LABORER ED OTTO | 4/29/2016 |
| 177.817(a) | DRIVER WILLIAM SPENCER | 3/15/2016 |
| 177.817(a) | DRIVER WILLIAM SPENCER | 4/29/2016 |
| 382.115(a) | DRIVER WILLIAM SPENCER | 6/17/2016 |
| 383.37(a) | DRIVER WILLIAM SPENCER | 4/29/2016 |


State Defs.' Ex. B 000076



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | | Review Date:<br>07/27/2016 |
|---|---|---|
| | **Part C** | |

**Reason for Review:** Compliance Review
**Planned Action:** Prosecution          NH-2016-0030-US1395

**Parts Reviewed Certification:**

| 325 | 382 | 383 | 387 | 390 | 391 | 392 | 393 | 395 | 396 | 397 | 398 | 399 | 171 | 172 | 173 | 177 | 178 | 180 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | | |

**Prior Reviews**          **Prior Prosecutions**

**Unsat/Unfit Information**
Is the motor carrier of passengers subject to the safety fitness procedures contained in 49 CFR part 385 subpart A, AND does it transport passengers in a commercial motor vehicle?

Does carrier transport placardable quantities of hazardous materials? Yes - Interstate and Intrastate
**Unsat/Unfit rule:**                                      45-Day - Interstate Placardable HM

| Corporate Contact: Griffin Spencer | Special Study Information: |
|---|---|
| Corporate Contact Title: LLC Member | |

**Remarks:**
INVESTIGATIVE REPORT RECEIVED BY:
Spencer Bros. LLC C/O Griffin or Brennan Spencer 116 Hounsell Ave Laconia, NH Via UPS
Attorney Michael Iacopino 85 Brook St Manchester, NH Via UPS
Spencer Bros. LLC
US DOT 2901481
July 27, 2016

REASON FOR INVESTIGATION:
Contact was made with Spencer Bros. LLC because of serious violations detected on a Roadside Inspection by the NH State Police dated 4/29/16. The Driver/Vehicle Examination report (#NH1039002337) showed several serious Hazardous Materials Violations as well as operating in Interstate Commerce without a U.S. DOT number. A check of the FMCSA data bases showed no previous contact or DOT registration with Spencer Bros. LLC. SA Doug Wood assisted by NH FPM Chris Gray conducted a comprehensive investigation on this carrier.

SCOPE OF INVESTIGATION:
An onsite Comprehensive Investigation was attempted at the PPB on June 13, 2016 with William Spencer Operations Manager and Driver. Mr. Spencer admitted during this meeting that there were transportation documents on the premises such as a day planner book that he keeps his working hours in, a DQ file and Maintenance records in a file cabinet locatedin the same room we were meeting in. Mr. Spencer denied our multiple requests to see these documents as a part or our review of his transportation operation. Mr. Spencer was served with a Demand Letter and Subpoena ordering him to produce required documents at the NH FMCSA office on June 22, 2016. Mr. Spencer did produce documents, but was not forthcoming with answers to questions about his operation. This caused a lengthy investigation because customers had to be interviewed in order to prove the nature of the carrier's operation. The investigation was concluded on July 27, 2016.

CARRIER OPERATION DESCRIPTION:
Spencer Bros. LLC is a Fuel Oil Tank installation and removal company. The removed oil tanks are scrapped at a metal recycling facility. The carrier is classified as an HM Carrier and Shipper. Spencer Bros. LLC is paid twice for each tank once for removing it and again for the price of scrap. According to the NH Secretary of State the two LLC Members are Griffin Spencer and Brendan Spencer. Griffin and Brendan are the sons of William Spencer. The PPB is located at 116 Hounsell Ave Unit #1 Laconia, NH. The PPB is located in a commercial building containing multiple other companies. The


**State Defs.' Ex. B 000077**



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | Review Date:<br>07/27/2016 |
| --- | --- |

### Part C

PPB consists of an office and a garage bay with parking for the cmv's. The carrier currently operates 3 cmv's consisting of 6 wheel dump truck with a gvwr of 33,400 pounds and 2 small box trucks with gvwr of 9,600 (however the VIN number shows a weight range of 10,001-14,000 lbs) and 12,300. The carrier has 2 trailers a large equipment trailer having a gvwr of 40,000 pounds and a utility trailer with a gvwr of 7,000 pounds. The carrier has construction equipment for the removal of underground tanks. As reported by William Spencer he is the only driver for the company and employs several part time helpers. Mr. Spencer reported that he works locally with little work in surrounding states however, evidence showed that he travels frequently to Massachusetts and has gone as far as the Brewer, Maine area (140 air miles).
William Spencer indicated that he has been in business for 30 years and started in the excavation business. He said that Spencer Bros. was started in 2012 and is a family run business. The information in a Safety Audit conducted with William Spencer in 2009 while he was in operation as Pro Se Excavators LLC (DOT 1744405) (inactive) in Part C of the Safety Audit Spencer Bros was listed as a sister company.
Mr. Spencer provided the gross revenue as 247,425.00 from Tax documents for fiscal year 2015. There was no evidence to suggest that the carrier is having any financial trouble.
During the 12 months prior to the start of the investigation there was no evidence to suggest that Spencer Bros. LLC participated in any emergency relief and did not operate under any temporary exemptions.

### PRE-INVESTIGATION:
On June 13, 2016 Mr. William Spencer was served with a Demand Letter and Subpoena listing documentation to be reviewed. The Subpoena listed all transportation records, insurance records, payroll records, HM records, maintenance records, phone records, fuel and toll records, accident records and other records dealing with his day to day operations for a Comprehensive review. Spencer Bros. LLC was given 10 business days to produce the documents requested.
The requested documents which included all vehicle maintenance, hours of service, driver qualification, Controlled Substance and Alcohol testing, All Hazardous Materials documents and insurance documents.
Since at the time of the roadside inspection Spencer, Bros. LLC did not have a US DOT number. The NH State Police Driver/ Vehicle Examination report dated 4/29/16 (#NH1039002337) was added after Spencer Bros. LLC new US DOT 2901481 was obtained by the carrier. The carrier profile was obtained and reviewed prior to the start of the investigation. Additional information resources reviewed included Query Central looking for any recent inspections, and the New Hampshire Secretary of State website.

### CDLIS (DRIVER LICENSE) CHECK:
CDLIS checks were conducted on William Spencer who is the only CDL driver who operated for Spencer Bros. LLC during the previous 365 days. William Spencer has a valid NH CDL -A with endorsements for Double/Triple, Tank and Passenger He does not have a HM endorsement. This violation was noted on part B of this report.

### AUTHORITY:
Spencer Bros. LLC Private Motor Carrier and does not require Authority

### INSURANCE:
Spencer Bros. LLC has the required 1 million of coverage in BIPD insurance in place and provided an MCS-90 from The Netherlands Insurance Company, policy number BA8879962

### DRIVERS WITH RED FLAG VIOLATIONS:
There were no Red Flag drivers for this carrier. The 383.37(a) violation listed in this report does not meet the Red Flag criteria.

### CONTROLLED SUBSTANCES AND ALCOHOL SUPPLEMENTAL REVIEW:
A Controlled Substances and Alcohol supplemental review was initiated. It was discovered that Spencer Bros. LLC did not have a Controlled Substance and Alcohol testing program in place until 8/20/16. The carrier was unable to produce documentation or name a consortium to show any tests had been done. The carrier implemented a program and took a Pre-employment test with Lakes Region General Hospital on 6/20/16 after being advised to do so by consultant Wayne Peasley.

### HAZARDOUS MATERIALS REVIEW:
As a result of the roadside inspection dated 4/29/16, A Hazardous Materials review was conducted on Spencer Bros. LLC. It was discovered that Spencer Bros. LLC was not in compliance with all of the required HM regulations they were subject to. It was discovered that William Spencer had transported on at least 2 occasions 275 gallon Heating Fuel Oil tanks primarily used to hold #2 fuel oil for oil fired heating systems. The oil tanks had not been cleaned and purged of residual oil. This puts them in the HM class 3, combustible liquid, packing group III. During the transportation of these Bulk

State Defs.' Ex. B 000078



| SPENCER BROS LLC<br>U.S. DOT #: 2901481 | Review Date<br>07/27/2016 |
|---|---|

| Part C |
|---|

tanks there were no shipping papers prepared, no placards of the vehicle. No employees handling the HM had any training. William Spencer did not have an HM endorsement on his license and the carrier was not registered with PHMSA. Mr. Spencer indicated that he had HM training about 10 years ago however, he could not produce any documentation for it. Mr. Spencer could not produce any evidence to show compliance in the HM regulations. When questioned about HM requirements, Mr. Spencer became difficult saying that he didn't need any of those things because oil is not a regulated commodity. When asked about Placards for the vehicle in indicated that he might have some placards around somewhere. When asked where they might be? Mr. Spencer replied they might be in my office. We asked to accompany Mr. Spencer into his office to look for them he said "no, you can't go in my office".

INVESTIGATION:
As indicated above Mr. William Spencer denied access to transportation documents on the day of our visit (6/13/16) He denied access to documents that were on the premises. As a result He was served a Demand Letter and Subpoena for the documents. On 6/27/16 Mr. Spencer appeared in the NH Division Office with the documents that he had. During this interview Mr. Spencer was not forthcoming with information and answers to questions. Mr. William Spencer produced limited documentation because he did not have most of the documents requested. Some of the documents provided were produced by Consultant Wayne Peasley during the time period provided by the Subpoena (10 days) for Mr. Spencer to produce documents.

Hours of Service: Mr. Spencer produced copies of a Date Ledger Book that he claimed he recorded his working hours in. For the review he failed to provide the actual book he provided copies of the pages. The copies showed either a name (Bill) or initial (B) for Mr. Spencer and the helper for the day along with a number next to the name or initial. Mr. Spencer said that the number was the numbers of hours worked that day. There was no start and stop time listed. There was also limited writing on the page which appeared to be what jobs were done that day however, some were illegible or were abbreviated.

Driver Qualification: Mr. Spencer produced 1 driver qualification file. He claims that he is the only driver for the company even though there are a total of 3 trucks in the fleet. The driver file was completed on 6/17/16 in conjunction with Consultant Wayne Peasley. Mr. Spencer acknowledged that he did not have a Driver file prior to 6/17/16.

Maintenance: Mr. Spencer produced some parts receipts, some repair orders for maintenance of the vehicles and some Maintenance Due sheets that were from the FMCSA ETA packet. I confirmed with Mr. Spencer and Consultant Wayne Peasley that the Maintenance Due Sheets that came from the FMCSA ETA packet were given to Mr.Spencer by Wayne Peasley and filled out a few days prior to the meeting. Mr. Spencer Acknowledged he did not have these documents prior to meeting with Mr. Peasley. The documents were not separated by vehicle there were in one pile. There were parts receipts that were discovered that had no vehicle associated with them and no corresponding work orders to show repairs were made. The repair orders from outside maintenance facilities did not contain all identifying information required. Mr. Spencer indicated that he uses local repair shops for repairs and PM services as well as inspections. However, the maintenance documents provided did not contain any proof of NH safety inspections. The trucks were checked for NH inspection stickers during level 5 inspections conducted. There were 2 level 5 inspections conducted on 7/21/16 report #'s US1395000018, US1395000019. These inspections did not result in any out of service conditions one minor violation was discovered. These inspections were used in the OOS calculation of this report. These inspections were conducted because of the lack of roadside data on the carrier in order to obtain a rating in that factor.

William Spencer Operations Manager/driver provided the fleet mileage which, appeared that he estimated.
There were no safety management practices in place for this carrier. Even though William Spencer has had previous Safety Audit, no policies or safety management procedures existed. In some circumstances the only reason there were not more critical violations (patterns) was because Mr. Spencer was the only driver and his maintenance program is done by local maintenance facilities.
William Spencer said that he would cut up and clean all tanks on site before he transported them. He insisted that he would not transport any more tanks that had not been cleaned. However, trips were discovered were tanks wer enot cut or cleaned. I also took photos on the first trip to the PPB on 6/13/16 of 2 275 gallon Oil Tanks sitting on end outside of the garage bay at the PPB location. The tanks wwere not cut or cleaned

The result of this review is and Unsatisfactory Safety Rating.
This investigation was made more difficult and took extended time because of the lack of cooperation of William Spencer Future investigations with William Spencer should be conducted with 2 people present all times. On the first day of this review Mr. Spencer went on a rant about his life being threatened by Trooper Doran of the NH State Police during the roadside inspection. He talked about his civil rights being violated and how he made a complaint about Trooper Doran to

FMCSA-2016-0294


O9ITA9LS1AZAA

26 of 49

State Defs.' Ex. B 000079



| SPENCER BROS LLC | Review Date: |
|---|---|
| U.S. DOT #: 2901481 | 07/27/2016 |

| Part C |
|---|

his Supervisors. This in conjunction with comments made by Mr. Spencer about government employees and how much money they make, When setting up the level 5 inspections he made comments about me "getting dirty I didn't think feds did that". Mr. Spencer's uncooperative behavior denying access to his records and then to his office forcing an interview in the parking lot and getting his attorney to restrict communications between investigators and Mr. Spencer. He showed a clear attempt to avoid any investigation.

FOLLOW-ON ACTION:
Enforcement is being taken on the Acute, Critical and HM Severe Level II violations discovered.
NH-2016-0030-US1395
172.600(c)(1), 177.800(c), 177.817(a), 382.115(a), 383.37(a)

DOCUMENTS PROVIDED TO CARRIER:
The carrier was provided with a copy of the CR, (2) Level 5 inspections conducted, FMCSA 385.15-385.17 documents, Safety Fitness rating and FMCSA corrective action handout for property carriers.
Since we were only in the carrier's office for a short time before the Demand/Subpoena was issued and we were refused entry on our return and the lack of cooperation from Mr. Spencer it is not known if they have any reference or regulatory manuals. Mr. Spencer retained the services of an Attorney who sent me and email containing a letter advising that he represents Mr. Spencer and Spencer Bros. LLC and further stated all further communication needs to go through his office. The closeout was not conducted with a carrier representative and the CR and associated documents were sent via UPS to Attorney Michael Iacopino, UPS Tracking number 1ZA4756A3595237426 and a copy of Spencer Bros. LLC at the PPB, UPS Tracking Number 1ZA4756A0297620435.

Medical Certification Confirmation:

| Driver | dob | Lic# | Medical Examiner | Lic# | State | Issued/Exp |
|---|---|---|---|---|---|---|
| William Spencer | 9/12/58 | 09SRW58121 | David Waldman | 534206231 | MA | 1/25/16-1/25/18 |

| Upload Authorized: | Yes | No | |
|---|---|---|---|
| Authorized by: | | Date: | |
| Uploaded: | Yes | No | Failure Code: |
| Verified by: | | Date: | |

8/1/2016 7:28:43 AM

FMCSA-2016-0294

Page 4 of 4

O9ITA9LS1AZAA

Capri 6.8.5.3

29 of 49

Page 29 of 49

State Defs.' Ex. B 000080



U.S. Department of
Transportation
1200 New Jersey Ave. S.E.
Washington, D.C. 20590

Federal Motor Carrier
Safety Administration

45 Day HM Placarded\Passenger
Carrier

August 3, 2016

In reply refer to:
USDOT Number: **2901481**
Review No.: 1296875/CR

SPENCER BROS LLC
PO BOX 7623
LACONIA, NH 03247-7263

Dear GRIFFIN SPENCER:

The proposed motor carrier safety rating for your company is:

UNSATISFACTORY

This proposed UNSATISFACTORY rating is the result of an onsite compliance review and evaluation of your safety fitness completed on July 27, 2016. An UNSATISFACTORY rating indicates that your company does not have adequate safety management controls in place to ensure compliance with the safety fitness standard which has resulted in occurrences of violations listed in 49 CFR 385.5(a-k), and indicates that your company is operating at an unacceptable level of compliance.

Under 49 CFR 385.13, a motor carrier of hazardous materials or passengers that receives a final safety rating of UNSATISFACTORY is prohibited from operating a commercial motor vehicle in interstate and intrastate commerce. Additionally, 49 USC 31144 and 49 CFR 385.13(a)(I) provide that this prohibition takes effect unless, within 45 days of the date of this notice, you take the necessary steps to improve the rating to conditional or satisfactory.

Pursuant to 49 USC 13905(f)(1)(B), the registration of a motor carrier that has been prohibited from operating in interstate and intrastate commerce for failure to comply with the safety fitness requirement shall be revoked.

UNLESS YOU IMPROVE YOUR PROPOSED UNSATISFACTORY RATING, IT WILL BECOME FINAL AND YOU WILL BE PROHIBITED FROM OPERATING COMMERCIAL MOTOR VEHICLES IN INTERSTATE AND INTRASTATE COMMERCE BEGINNING ON SEPTEMBER 18, 2016, AND YOUR REGISTRATION SHALL BE REVOKED, IF APPLICABLE.

If you have been subject to any Order(s), prohibition(s), registration suspension(s) and/or registration revocation(s) in any other case(s) or proceeding(s), the prohibitions and registration revocation in this case will be in addition to, and will not supersede, amend, or modify any Orders, notices, and/or requirements in any other case(s) or proceeding(s). Further, the orders, prohibitions and/or registration revocation may also attach and apply to the operations of successor entities, including any motor carrier entity or entities established or used to avoid the consequences of a "final" unsatisfactory safety rating.

Immediate action must be taken to correct any deficiencies or violations discovered during the compliance review. Your operation was found to be deficient with respect to the applicable safety regulations in the following areas:

Part 391    QUALIFICATIONS OF DRIVERS
Part 392    DRIVING OF MOTOR VEHICLES
Part 172    HAZARDOUS MATERIALS TABLE
Part 396    INSPECTION, REPAIR AND MAINTENANCE
Part 382    CONTROLLED SUBSTANCE AND ALCOHOL USE AND TESTING
Part 383    COMMERCIAL DRIVERS LICENSE
Part 177    CARRIAGE BY PUBLIC HIGHWAY

DOT: 2901481

Page 1 of 2

FMCSA-2016-0294

31 of 49

State Defs.' Ex. B 000082

Kathleen A. Hickey
William J. Quinn **
Jaye L. Rancourt
Daniel J. Kalinski
Iryna N. Dore *
Jenna M. Bergeron *

OF COUNSEL
William E. Brennan *
Gary S. Lenehan
James A. Connor

*ALSO ADMITTED MA
**ALSO ADMITTED ME

85 Brook Street  |  Manchester, NH 03104
Telephone: 603-668-8300  |  Fax: 603-668-1029
www.brennanlenehan.com

August 11, 2016

**U.S. DOT Dockets**
**United States Department of Transportation**
**1200 New Jersey Avenue, SE**
**Washington, DC 20590**

**Chief Safety Officer**
**Federal Motor Carrier Safety Administration**
**Attention: Adjudications Counsel**
**1200 New Jersey Avenue, SE**
**Washington, DC 20590**

> Re:   *Spencer Bros, LLC – U.S. DOT #2901481*
>       *Petition for an Administrative Review*

Dear Sir/Madam:

Please be advised that this firm represents the interests of Spencer Bros, LLC in the above captioned matter. We are writing to request an administrative review of proposed safety rating pursuant to 49 C.F.R. § 385.15(c). In support thereof please note the following:

Spencer Bros, LLC (Company), is a small, privately owned business with only one driver, Bill Spencer. Mr. Spencer operates a 2004 Chevrolet Express 3500 Box Truck, a 2008 GMC Savana 3500 Box Truck, and a 2006 Peterbilt 335 Truck to conduct Company's activities. Specifically, Mr. Spencer transports cleaned and purged oil tanks. Occasionally, he transports heating oil in small quantities. To transport heating oil, Mr. Spencer uses the 2004 Chevrolet Express 3500 Box Truck (GVWR 9600 lbs.). All heating oil is transported in non-bulk containers of less than 119 gallons.

On April 29, 2016, Mr. Spencer was pulled over by a state trooper in the State of New Hampshire. At the time, Mr. Spencer was transporting a 275 gallon cleaned and purged oil tank. It was erroneously assumed, however, that the oil tank was not empty and contained heating oil. As a result, Spencer Brothers, LLC, was erroneously charged with the following violations:

State Defs.' Ex. B 000085

1. <u>49 C.F.R. § 383.37 (a) - Allowing, requiring, or authorizing a driver to operate a commercial motor vehicle during any period in which the driver does not have a current CLP or CDL or does not have a CLP or CDL with the proper class or endorsements.</u>

The Company did not violate 49 C.F.R. § 383 on April 29, 2016.

Part 383 applies to every person who operates a commercial motor vehicle in interstate, foreign, or intrastate commerce, to all employers of such person, and to all States. *See* 49 C.F.R. § 383.3(a). The Company does not use combination vehicles (Group A) and heavy straight vehicles (Group B), as defined in 49 C.F.R. § 383.5, for transportation of hazardous materials. In order to transport hazardous materials, the Company uses its small vehicle (Group C) a 2004 Chevrolet Express 3500 Box Truck. Relative to small vehicles, 49 C.F.R. § 383.5 defines a "commercial motor vehicle" as a motor vehicle used in commerce to transport property if the motor vehicle is used in the transportation of hazardous materials. *See* 49 C.F.R. § 383.5.

On April 29, 2016, Mr. Spencer did not transport hazardous materials. He transported a cleaned and purged oil tank. Therefore, Mr. Spencer did not operate a "commercial motor vehicle" as defined by 49 C.F.R. § 383.5 and the Company did not violate 49 C.F.R. § 383.37(a).

2. <u>49 C.F.R. § 177.817(a) – Transporting a shipment of hazardous materials not accompanied by a properly prepared shipping paper.</u>

On April 29, 2016, Mr. Spencer did not ship hazardous materials. Therefore, he did not violate 49 C.F.R. § 177.817(a).

3. <u>49 C.F.R. § 177.823(a) - Moving a transport vehicle containing hazardous material that is not properly marked or placarded.</u>

On April 29, 2016, Mr. Spencer did not ship hazardous material. Therefore, he did not violate 49 C.F.R. § 177.823(a).

4. <u>49 C.F.R. § 107.608(b) – Transporting a hazardous material without having registered with the Department. Under Subparagraph G of part 107.</u>

On April 29, 2016, Mr. Spencer did not ship hazardous material. Therefore, he did not violate 49 C.F.R. § 107.608(b).

5. <u>49 C.F.R. § 172.600 (c)(1) – Failing to provide emergency response information</u>

On April 29, 2016, Mr. Spencer did not ship hazardous material. Therefore, he did not violate 49 C.F.R. § 172.600 (c)(1). *See* C.F.R. § 172.600 (b) (stating that this subpart applies to persons who offer for transportation, accept for transportation, transfer or otherwise handle hazardous materials during transportation).

In support thereof, attached please find a sworn affidavit from Mr. Spencer.

2

State Defs.' Ex. B 000086

Based on the aforementioned, the Company requests an Administrative Review of the identified charges.

In addition, please forward to this office all documents, reports or other materials supporting the claim that Mr. Spencer transported hazardous material on April 29, 2016.

Should you need additional documentation or information, please do not hesitate to contact me.

Thank you.

Very truly yours,

Michael J. Iacopino

IND/
Enclosures

State Defs.' Ex. B 000087

BEFORE THE
UNITED STATES DEPARTMENT OF TRANSPORTATION
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

In the Matter of:

SPENCER BROS. LLC,
US DOT NO. 2901481

Petitioner.

Docket No. FMCSA-2016-0294
(Eastern Service Center)

# FINAL ORDER DENYING PETITION FOR ADMINISTRATIVE REVIEW OF PROPOSED SAFETY RATING

## 1. Background

On August 11, 2016, Petitioner, Spencer Bros., LLC, served a request for administrative review of a proposed safety rating under 49 CFR 385.15 (Request). Although Petitioner did not indicate whether the proposed safety rating was Conditional or Unsatisfactory, the Field Administrator for the Eastern Service Center, Federal Motor Carrier Safety Administration (FMCSA or Agency), responded to the Request on September 7, 2016, stating that the proposed safety rating, which was based on a compliance review (CR) completed July 27, 2016 by the Agency's New Hampshire Division,[1] is Unsatisfactory. It is scheduled to go into effect September 18, 2016.[2]

## 2. Procedures for Assigning a Safety Rating

The procedures for assigning a safety rating at the conclusion of a CR are set out in Appendix B to 49 CFR part 385 (Appendix B). Under the Agency's Safety Fitness

---

[1] *See* Exhibit 1 to Attachment 1 to Field Administrator's Response to the Petition for Administrative Review of Proposed Safety Rating under 49 CFR 385.15 (Field Administrator's Response).

[2] *See* Exhibit 2 to Attachment 1 to Field Administrator's Response.

State Defs.' Ex. B 000106

Rating Methodology (SFRM), ratings are assigned for each of six factors, if applicable, which are then used to determine a carrier's overall safety rating according to a Safety Rating Table.[3] An "unsatisfactory" rating in one rating factor will result in an overall Conditional safety rating, even if all other factors are rated "satisfactory."[4]

The ratings for Factors 1 through 5 are assigned based on violations of acute regulations and patterns of noncompliance with critical regulations.[5] A pattern of noncompliance with a critical regulation exists when the number of violations equals 10 percent or more of the records examined. A carrier is assessed one point for each violation of an acute regulation or each pattern of noncompliance with a critical regulation.[6] The carrier will be rated "unsatisfactory" in a rating factor if the acute and/or critical violations for that factor total two or more points. It will be rated "conditional" in a rating factor if the acute or critical violation for that factor equals one point.[7]

A carrier's Factor 6 rating is determined by its recordable accident rate.[8] An urban carrier (a carrier operating entirely within a radius of 100 air miles) will receive an "unsatisfactory" rating for the accident factor if its recordable accident rate is greater than 1.7; by contrast, a non-urban carrier will receive an "unsatisfactory" rating for the accident factor if its recordable accident rate is greater than 1.5.[9]

3. **Petitioner's Safety Rating**

FMCSA assigned Petitioner an overall Unsatisfactory safety rating as a result of

---

[3] 49 CFR part 385, App. B, § III.A.(b).
[4] *Id.*
[5] Acute and critical regulations are identified in 49 CFR part 385, App. B, § VII.
[6] However, patterns of noncompliance with critical regulations in 49 CFR part 395 are assessed two points, in accordance with 49 CFR part 385, App. B, § II.(h).
[7] 49 CFR part 385, App. B, § II.C.(b).
[8] *Id.* at § II.B.
[9] *Id.* at § II.B.(d).

State Defs.' Ex. B 000107

the following violations discovered during the CR:

| Violation # | Citation | Factor | Description |
|---|---|---|---|
| 1 Acute | 49 CFR 382.115(a) | 2 (Driver) | Failing to implement an alcohol and/or controlled substances testing program on the date the employer begins commercial motor vehicle operations. |
| 2 Acute | 49 CFR 383.37(a) | 2 (Driver) | Allowing, requiring, or authorizing a driver to operate a commercial motor vehicle during any period in which the driver does not have a commercial driver's license (CDL) with the proper hazardous materials (HM) endorsement. |
| 3 Critical | 49 CFR 395.8(a) | 3 (Operational) | Failing to require driver to make a record of duty status. |
| 4 Critical | 49 CFR 177.800(c) | 5 (Hazardous Materials) | Failing to instruct a category of employees in the hazardous material regulations by failing to provide General Awareness Training. |
| 5 Critical | 49 CFR 177.817(a) | 5 (Hazardous Materials) | Transporting a shipment of hazardous materials not accompanied by a properly prepared shipping paper. |

The CR Report shows that Petitioner received "unsatisfactory" ratings for Factors 2, 3, and 5. Two or more "unsatisfactory" factor ratings results in an overall rating of Unsatisfactory.[10] Petitioner challenged only two violations that affected its safety rating: §§ 383.37(a) and 177.817(a).[11]

4. **The Arguments and Evidence**

   a. <u>49 CFR 383.37(a)</u>

Petitioner averred that it did not violate 49 CFR 383.37(a) because on April 29,

---

[10] Pt. 385, App. B, § III.A.(b).
[11] Although Petitioner also challenged violations of 49 CFR 177.823(a), 107.608(b), and 172.600(c)(1), they did not factor into the calculation of Petitioner's safety rating and, therefore, will not be addressed.

State Defs.' Ex. B 000108

2016, the date of the alleged violation, it did not transport a hazardous material because the oil tank it was transporting was cleaned and purged. Petitioner reasoned that if it was not transporting a hazardous material, it was not operating a commercial motor vehicle (CMV), which is defined in part as a Group C Small Vehicle in 49 CFR 383.5; that is, a vehicle of any size that is used in the transportation of hazardous materials. Petitioner asserted that its vehicle, a 2004 Chevrolet Express 3500 Box Truck, is a Group C Small Vehicle and that it did not use vehicles that meet the definition of a Combination Vehicle (Group A) or a Heavy Straight Vehicle (Group B). Petitioner averred, therefore, that it did not violate 49 CFR 383.37(a). Petitioner provided the affidavit of William Spencer, Petitioner's owner and only driver, who swore under oath that he "was transporting a 275[-]gallon, cleaned and purged, oil tank. There was no hazardous material in the tank."[12]

The Field Administrator argued that not only did Mr. Spencer not make that claim at the time of the stop, but he also "admitted that that the tanks were not cleaned and purged, and may have contained some oil." The Field Administrator submitted the Signed Statement (Statement) of Trooper First Class Michael Doran (TFC Doran), who said that, upon approaching the vehicle, he detected an odor of petroleum, which became "extremely strong" when Mr. Spencer opened the rear door. TFC Doran observed four tanks that appeared to be 275-gallon heating oil tanks standing on end and a fifth tank cut up. The tanks had evidence of liquid on and in them, and Mr. Spencer told TFC Doran that the tanks had not been cleaned and purged. TFC Doran further stated that when he asked Mr. Spencer why he did not have an HM endorsement, Mr. Spencer responded that

---

[12] *See* Exhibit 3 to Attachment 1 to Field Administrator's Response.

4

he did not want to have to take the test every two years.[13]  TFC Doran also took photos of

the back of the truck, which clearly shows one heating oil tank on its side, and a photo of

Mr. Spencer's license, which shows that he did not possess an HM endorsement.[14]

The Field Administrator argued that heating oil is a combustible class 3 HM;[15]

moreover, the Hazardous Materials Regulations require that an empty packaging

containing only the residue of a hazardous material shall be offered for transportation and

transported in the same manner as when it previously contained a greater quantity of that

hazardous material.[16]  To be exempted from this requirement, the packaging must be

"sufficiently cleaned of residue and purged of vapors to remove any potential hazard."[17]

The Field Administrator concluded that there was no evidence that the tanks had been

cleaned and purged before transporting them other than Mr. Spencer's self-serving

affidavit, which he contradicted at the time of the stop.

b. 49 CFR 177.817(a)

Petitioner made the same argument that it did for the previous violation – because

it did not ship hazardous materials, it did not violate 49 CFR 177.817(a).  The Field

Administrator also made the same argument – because the evidence demonstrates that the

tanks were not cleaned and purged, Petitioner transported the hazardous material, heating

oil, on April 29, 2016 without the proper HM endorsement on his CDL.

---

[13] *See* Exhibit 5 to Attachment 1 to Field Administrator's Response.
[14] *See* Exhibit 6 to Attachment 1 to Field Administrator's Response.  The picture quality
of the provided photo is poor; thus, although the Field Administrator contended that the
photo of the back of Mr. Spencer's truck "shows the heating oil tanks[,]" only the tank on
its side is clearly visible.  Nevertheless, careful scrutiny of the photo reveals four standing
tanks toward the front of the truck.
[15] 49 CFR 172.101, HM Table.
[16] 49 CFR 173.29.
[17] 49 CFR 173.29(b)(2).

State Defs.' Ex. B 000110

5. **Decision**

The purpose of an administrative appeal under 49 CFR 385.15 is to determine whether FMCSA committed an error in assigning a safety rating. In its request, the motor carrier must explain the error it believes FMCSA committed in assigning the safety rating and provide information or documents in support of its argument.[18] The motor carrier has the burden of proof to demonstrate that FMCSA erred in assigning its safety rating.[19]

The Field Administrator is correct that heating oil is a hazardous material in accordance with the HM Table and that Petitioner failed to meet the requirement for an exception because the tanks were not cleaned and purged.[20] TFC Doran stated that he detected the odor of petroleum when he approached the vehicle, the odor became extremely strong when Mr. Spencer opened the back of the truck, TFC Doran noticed liquid on and in the tanks, Mr. Spencer did not claim that the tanks were cleaned and purged at the time of the stop, and he admitted to TFC Doran that they were not and may have contained some oil. In fact, his stated reason for not having the HM endorsement was that he did not want to take the test every two years.[21] Accordingly, since Petitioner was transporting a hazardous material, Petitioner's vehicle was a Group C CMV, a

---

[18] See 49 CFR 385.15(b).

[19] See In the Matter of AA Logistic, Inc. f/k/a P & A Transport, Inc., Docket No. FMCSA-2012-0206-0005, Final Decision on Petition for Review of Safety Rating, Aug. 13, 2012, at 2.

[20] Although the Field Administrator's photographic evidence shows only the tank on its side clearly, careful scrutiny of the photo reveals four standing tanks toward the front of the truck. Moreover, TFC Doran's Statement that there were four tanks standing on end, with liquid on and in them, is persuasive.

[21] See Exhibit 5 to Attachment 1 to Field Administrator's Response.

State Defs.' Ex. B 000111

FMCSA-2016-0294
Page 7 of 7

vehicle of any size that is used in the transportation of hazardous materials.[22]

Because Petitioner was operating a CMV (Group C) and transporting a hazardous material under 49 CFR 383.5, it was subject to both 49 CFR 383.37(a) and 177.817(a). Therefore, Petitioner has not met its burden to demonstrate that the Field Administrator committed an error in assigning the Unsatisfactory safety rating based upon the 49 CFR 383.37(a) and 177.817(a) violations. Accordingly, the overall Unsatisfactory safety rating was properly assigned, and Petitioner's Request is denied.

*It Is So Ordered.*

John Van Steenburg
Assistant Administrator
Federal Motor Carrier Safety Administration

9/16/16
Date

---

[22] 49 CFR 383.5

State Defs.' Ex. B 000112

FMCSA-2016-0294

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of September, 2016, the undersigned mailed or delivered, as specified, the designated number of copies of the foregoing document to the persons listed below.

Michael J. Iacopino, Esq.
Brennan Lenehan
Iocapino & Hickey
85 Brook Street
Manchester, New Hampshire 03104
*Counsel for Petitioner*

One Copy
U.S. Mail
and via facsimile to
(603) 668-1029

Cynthia Campise, Esq.
Trial Attorney
Office of Chief Counsel (MC-CCE)
Federal Motor Carrier Safety Administration
Eastern Service Center
802 Cromwell Park Drive, Suite N
Glen Burnie, Maryland 21061

One Copy
U.S. Mail
and via E-mail to
cynthia.campise@dot.gov

U.S. Department of Transportation
Dockets, M-30
West Building Ground Floor
Room W12-140
1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

One Copy
Electronically Filed
www.regulations.gov

State Defs.' Ex. B 000113

# EXHIBIT 10

State Defs.' Ex. B 000114

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
DOCKET NO.

WILLIAM SPENCER,   )
   )
   Plaintiff   )
   )
v.   )
   )   **COMPLAINT**
ROCHESTER TRUCK, INC.   )
   )
   Defendants   )

14-0586

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
FEB 10 2014

CLERK

COPY

### PARTIES

1.  The Plaintiff, William Spencer (Spencer) is an individual doing business in North Reading, Massachusetts.

2.  The Defendant, Rochester Truck, Inc. is, upon information and belief, a corporation duly organized with a place of business at 8 Flagg Road, Rochester, NH.

### JURISDICTION

3.  Jurisdiction is claimed pursuant to M.G.L. c. 223A, the Massachusetts Long Arm Statute.

### FACTS

4.  On or about December 14, 2012 the plaintiff purchased a 2008 GMC model C3500 Truck form the defendant, for the sum of $14,711.00.

5.  Upon information and belief, the defendant in the course of its business regularly conducts business in the Commonwealth of Massachusetts by selling vehicles to Massachusetts residents.

6.  Immediately after the purchase, while working in Massachusetts, the plaintiff noticed that the "check engine light" was coming on while driving.

- 1 -

State Defs.' Ex. B 000115

7.     Plaintiff contacted the defendant who informed the plaintiff that the light was coming on in part, because the truck had a governor that prevented the truck from obtaining a speed of 75 miles per hour. In addition, the vehicle had problems with the functioning of the air bags.

8.     The plaintiff never was informed that a governor had been placed on the vehicle before buying it.

9.     Despite repeated requests to the defendant and it employees, the defendant has been unable to correct the defect.

10.     Upon information and belief, the defendant knew that the check engine light was being displayed, and that the vehicle was defective at the time of sale.

11.     It was negligent for the defendant to sell a vehicle in defective condition, as evidenced by the check engine light displaying at the time of sale.

12.     To date, the plaintiff has been unable to correct the defects in the truck,

13.     Had the plaintiff been aware of the defects at the time of purchase, plaintiff would not have purchased the vehicle.

14.     AS a result of the defendant's actions, the plaintiff has been damaged.

WHEREFORE, plaintiff William Spencer seeks judgment as aforesaid against the Defendant for:

i.     all provable damages;
ii.     any attorney fees incurred;
iii.     statutory interest; and
iv.     all other awards that this Court deems appropriate.

William Spencer
By his Attorney,

Mark J. Favaloro, Esq.
BBO # 160330
159 Haven Street, Suite 1
Reading, MA 01867
781.439.9267

mark@markfavaloro.com

- 2 -



**BRENNAN LENEHAN**
IACOPINO & HICKEY

Michael J. Iacopino
Kathleen A. Hickey
William J. Quinn ••
Jaye L. Rancourt
Daniel J. Kalinski
Iryna N. Dore •
Jenna M. Bergeron •

OF COUNSEL
William E. Brennan •
Gary S. Lenehan

•ALSO ADMITTED MA
••ALSO ADMITTED ME

85 Brook Street  |  Manchester, NH 03104
Telephone: 603-668-8300  |  Fax: 603-668-1029
www.brennanlenehan.com

2016 OCT 28 P 1: 14

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT

October 28, 2016

Office of the Clerk
U.S. Court of Appeals for the First Circuit
U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

    **Re: Spencer Bros. LLC, *Petitioner* v. United States Department of Transportation, Federal Motor Carrier Safety Administration, *Respondent***

Dear Clerk Carter:

    Enclosed, please find the following documents to be filed with the Court:

- An Original and (5) copies of the Petition for Review, with attached Exhibits
- An Original and (3) copies of the Temporary Motion for Emergency Stay, with attached Exhibits
- An Original and (5) copies of the Corporate Disclosure Statement
- An Original and (5) copies of the Notice of Appearance for Michael J. Iacopino
- Check in the Amount of $500.00, representing the filing fee for this matter

Thank you for your attention in this matter.

                    Respectfully submitted,

                    Jaye L. Rancourt, Esq.